**UNITED STATES of America, Plaintiff-Appellant,**

v.

**Raul FREIRE, Antonio Maria Rubio, Jorge Mastrapa, and Hector Guillermo Pupo, Defendants-Appellees.**

**No. 82–5314.**

United States Court of Appeals, Eleventh Circuit.

Aug. 1, 1983.

Rehearing and Rehearing En Banc Denied Sept. 28, 1983.

**1516**

Stanley Marcus, U.S. Atty., Miami, Fla., Richard H. Kamp, Michael B. Cohen, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellant.

Paul Morris, Miami, Fla., for defendants-appellees.

Before KRAVITCH and JOHNSON, Circuit Judges, and LYNNE *, District Judge.

KRAVITCH, Circuit Judge:

This case presents the question whether the recent Supreme Court holding in *United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), applies retroactively. We determine that it does. Hence we reverse the district court's order suppressing the evidence seized from appellees' briefcases and remand the case for trial.

I

While performing a routine cargo inspection at Miami International Airport on December 15, 1981, customs inspectors discovered approximately four kilograms of cocaine secreted in a shipment of furniture from Santa Cruz, Bolivia. Customs officials and Drug Enforcement Administration (DEA) agents placed the furniture under continuous surveillance. They observed a moving van pick up the furniture and proceed to a warehouse, and a blue Mercedes, driven by defendant Rubio with defendant Pupo as a passenger, scouting the adjacent area. Pupo appeared to be talking into a mobile telephone.

Shortly thereafter, another van, driven by defendant Mastrapa with defendant Freire as a passenger, arrived at the opposite end of the warehouse. Agents watched as the furniture was unloaded from the first van, carried through the warehouse, and loaded into the second van. The Mercedes and the second van then left the warehouse, and the agents followed.

As the two vehicles under surveillance approached a toll booth on the Florida Turnpike, the Mercedes sped alongside the van, and the occupants engaged in conversation. After it became apparent to the agents that the vehicles were undertaking countersurveillance tactics, both were stopped.

A search of the van revealed the furniture containing the cocaine and a Browning .380mm semi-automatic handgun that was found in the glove compartment. Mastrapa and Freire were arrested and taken into custody.

Meanwhile, other agents had stopped the Mercedes. As defendant Pupo exited the passenger's side, the agents noticed a folded, dry dollar bill at Pupo's feet. This aroused their suspicion because it had been raining, and the ground was wet. The folded dollar bill contained cocaine. Presented with this contraband, the agents searched the passenger compartment of the car for other drugs. A second folded bill containing cocaine was found in the ashtray. The defendants were asked if they had any weapons, and Pupo responded they did not.

---

* Honorable Seybourn H. Lynne, U.S. District Judge for the Northern District of Alabama, sitting by designation.

The agents then opened and searched the trunk of the car where they found two closed, but unlocked briefcases.[1]

These were not opened at the scene of the arrest, but were taken to DEA headquarters. While being driven to the Miami DEA District Office, Pupo recanted his earlier statement that he had no weapons, and told the agents there was a gun in his briefcase. Upon opening the two attaches at DEA headquarters, the agents discovered that Pupo's briefcase contained a handgun, a legal pad with handwritten notations, and other documents. The other briefcase, which belonged to Freire, contained Freire's identification papers.

The four appellees were indicted for intentionally importing cocaine, in violation of 21 U.S.C. §§ 952(a), 960(a)(1), and 18 U.S.C. § 2, conspiracy to import cocaine, in violation of 21 U.S.C. § 963, conspiracy to possess cocaine with the intent to distribute, in violation of 21 U.S.C. § 846, possession with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, and use of a firearm during the commission of a felony, in violation of 18 U.S.C. §§ 924(c)(1) and (2). Additionally, Pupo and Rubio were indicted for possession of less than one gram of cocaine, in violation of 21 U.S.C. § 844(a) and 18 U.S.C. § 2.

The defendants filed a joint motion to suppress the evidence garnered through the warrantless searches of the van, the Mercedes, and the two briefcases. The magistrate recommended that most of the evidence be admitted, but that the evidence seized from the briefcases be suppressed. Both parties sought review of the recommendations, and the district court, relying on the testimony presented during the suppression hearing, adopted the magistrate's oral recommendations. Pursuant to 18 U.S.C. § 3731, the Government appeals that decision.

Before addressing the retroactivity of *Ross,* we first must resolve whether Freire's fourth amendment rights were implicated by the search of the briefcase.

## II

Freire was a passenger in the van, and consequently, had neither actual nor constructive possession of his briefcase at the time it was seized. He did not testify at the suppression hearing, but Pupo, the passenger in the Mercedes, testified that on the morning of their arrest, Freire had given him his briefcase for safekeeping during the day. Although no specific instructions were given, Pupo stated that he was expected to respect Freire's privacy. The Government did not seriously dispute that Freire was the owner of the briefcase. Based upon Pupo's testimony, the magistrate found that Freire's fourth amendment interests were implicated. The district judge, upon a review of the record, agreed.

A criminal defendant's right to challenge a search and/or seizure as being violative of the fourth amendment[2] is premised upon the existence of a legitimate expectation of privacy in the invaded place. *Rakas v. Illinois,* 439 U.S. 128, 142–43, 99 S.Ct. 421, 430, 58 L.Ed.2d 387, 400–02 (1978). The burden of persuasion on this issue is placed squarely on the movant. *Id.*

---

1.  At the hearing on defendants' motion to suppress, the magistrate found that the briefcases were in the passenger compartment of the car, but the district court rejected that finding, and determined that they were found in the trunk. Our resolution of this case renders it unnecessary to determine the location of the briefcases, but we will adhere to the district judge's finding that the agents seized them from the trunk.

2.  The fourth amendment to the Constitution of the United States provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

at 130 n. 1, 99 S.Ct. at 424 n. 1, 58 L.Ed.2d at 393 n. 1; *United States v. Torres,* 703 F.2d 1267, 1271 (11th Cir.1983).

The Government argues that Freire failed to shoulder his burden: he did not testify; no evidence was presented regarding his intent to exercise control over the briefcase; Pupo was given no instructions concerning Freire's privacy; and the briefcase was out of Freire's possession and control for over eight hours. The magistrate and district judge were unimpressed by these arguments, and so are we.

■ A briefcase is often the repository for more than business documents. Rather, it is the extension of one's own clothing because it serves as a larger "pocket" in which such items as wallets and credit cards, address books, personal calendar/diaries, correspondence, and reading glasses often are carried. Few places outside one's home justify a greater expectation of privacy than does the briefcase. *See generally United States v. Chadwick,* 433 U.S. 1, 13, 97 S.Ct. 2476, 2484, 53 L.Ed.2d 538 (1977).

The Government does not contend on appeal that this is not so. Instead, it focuses on Freire's alleged failure to demonstrate *his* expectation of privacy in the briefcase.

■ Mere ownership is not the talisman for fourth amendment jurisprudence. So teaches *Rakas.* It is, nevertheless, a bright star by which courts are guided when the place invaded enjoys universal acceptance as a haven of privacy, such as one's home. That Freire did not take the stand himself is not fatal to his privacy claim. Pupo's testimony that the briefcase was Freire's and that Freire had entrusted it to Pupo for safekeeping was uncontroverted. Thus, Freire shouldered his burden of establishing his continuing privacy interest in the briefcase. Moreover, the Government did not show that Freire had abandoned it either purposely or through neglect or had otherwise abrogated his expectation of privacy. Hence, Freire's privacy interest remained intact. The district court correct-

ly determined that Freire could challenge the search and seizure of his briefcase.

### III

The Government contends that Pupo's voluntary statement that his briefcase contained a small handgun vitiated his legitimate expectation of privacy in either one of two ways: first, the statement constituted consent to search; alternatively, Pupo's admission brought the gun into plain view. Because we conclude that the Supreme Court's decision in *Ross* controls the outcome of this case, we need not address these contentions. Having determined that appellees' legitimate expectations of privacy were implicated, we now consider the applicability of *Ross* to the search of the briefcases.

■ Upon a motion to suppress evidence garnered through a *warrantless* search and seizure, the burden of proof as to the reasonableness of the search rests with the prosecution. *See, e.g., United States v. Impson,* 482 F.2d 197 (5th Cir.1973). The Government must demonstrate that the challenged action falls within one of the recognized exceptions to the warrant requirement, thereby rendering it reasonable within the meaning of the fourth amendment.

■ Upon appeal the Government urges that the automobile exception to the fourth amendment warrant requirement is applicable to this case because of the intervening decision in *Ross.* First considered in *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), the automobile exception allows officers to search vehicles in certain instances even if a search warrant has not been obtained beforehand. In cases following *Carroll* the Court has proffered two rationalizations for the exception: (1) the exigency of the vehicle's mobility, *see, e.g., Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); and (2) the diminished expectation of privacy in the automobile, *see, e.g., United States v. Chad-*

*wick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977); *Cardwell v. Lewis,* 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974). *See generally* 2 W. LeFave, *Search and Seizure* § 7.2 (1978).

The Court's latest decision affecting the automobile exception, *Ross, supra,* was decided after the search of appellees' briefcases. At that time, the two controlling Supreme Court decisions were *Robbins v. California,* 453 U.S. 420, 101 S.Ct. 2841, 69 L.Ed.2d 744 (1981), and *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981).

In *Robbins,* the Court addressed the constitutionality of a warrantless search and seizure of two packages found in the recessed luggage compartment of Robbins's station wagon. California Highway Patrol officers had stopped Robbins for erratic driving. When Robbins opened his door to retrieve the car's registration, the officers smelled marijuana. A search of the passenger compartment revealed marijuana and related paraphernalia. Robbins was arrested and placed in the back seat of the patrol car. The officers then raised the tailgate of Robbins's station wagon, found the recessed handle of the cover over the tire well and luggage compartment, and opened the compartment. Inside were two packages wrapped in green opaque plastic. The officers unwrapped the packages; each one contained marijuana.

After Robbins's case was remanded in light of *Arkansas v. Sanders,* 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979), the Court granted certiorari a second time because of the "continuing uncertainty as to whether closed containers found during a lawful warrantless search of an automobile may themselves be searched without a warrant." *Robbins,* 453 U.S. at 423, 101 S.Ct. at 2844. Six Justices voted to invalidate the warrantless search of the packages, but only four—Justices Stewart, Brennan, White, and Marshall—concurred in the opinion of the Court.

Justice Stewart's plurality opinion traced the history and logic underlying the Court's

container decisions in *United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), and *Arkansas v. Sanders,* 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979). In both cases the Court refused to extend the automobile exception to closed items of luggage. The automobile exception is justified by both the inherent mobility of and diminished expectation of privacy in automobiles, *see, e.g., Chadwick, supra, Cady v. Dombrowksi,* 413 U.S. 433, 441–42, 93 S.Ct. 2523, 2528, 37 L.Ed.2d 706 (1973), but neither justification, according to the *Robbins* plurality, applies to closed containers found in a lawfully stopped automobile: "No such diminished expectation of privacy characterizes luggage; on the contrary, luggage typically is a repository of personal effects, the contents of closed pieces of luggage are hidden from view, and luggage is not generally subject to state regulation." *Robbins,* 453 U.S. at 424–25, 101 S.Ct. at 2844–45. Thus, the Court held that a closed opaque container may not be opened without a warrant, even if the container is discovered in the course of a lawful search of an automobile. *Id.* at 428–29, 101 S.Ct. at 2846–47.

Justice Powell, concurring in the Court's judgment, voiced his frustration with the case's posture. He noted the dissent's characterization of the issue as the scope of the automobile exception, but stated that the parties in *Robbins* had not argued the automobile exception, and that "it is late in the Term for us to undertake *sua sponte* reconsideration of basic doctrines." *Robbins,* 453 U.S. at 435, 101 S.Ct. at 2850 (Powell, J., concurring in judgment). Justice Powell did, however, attack the plurality on the merits:

> The plurality's approach strains the rationales of our prior cases and imposes substantial burdens on law enforcement without vindicating any significant values of privacy. I nevertheless concur in the judgment because the manner in which the package at issue was carefully wrapped and sealed evidenced petitioner's expectation of privacy in its contents.

*Id.* at 429, 101 S.Ct. at 2847. Perhaps more than that of any other Justice in *Robbins,* the opinion of Justice Powell anticipated *United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982).

In three separate dissents, Justices Blackmun, Rehnquist, and Stevens argued that the Court should have addressed the permissible scope of the automobile exception. Justice Stevens criticized the decisions in *Chadwick* and *Sanders,* reasoning that neither decision precluded the Court from applying the automobile exception to searches of containers found in vehicles that the police have probable cause to search. "[A] proper application of the automobile exception," according to Justice Stevens, "will uphold a search of a container located in a car only if the police have probable cause to search the entire car." *Robbins,* 453 U.S. at 449 n. 9, 101 S.Ct. at 2857 n. 9 (Stevens, J., dissenting).

The companion case to *Robbins, New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), considered the following question: "When the occupant of an automobile is subjected to a lawful custodial arrest, does the constitutionally permissible scope of a search incident to his arrest include the passenger compartment of the automobile in which he was riding?" *Id.* at 455, 101 S.Ct. at 2861. The Supreme Court held that it does include a search of the passenger compartment, but not the trunk. *See id.* at 460 & n. 4, 101 S.Ct. at 2864 & n. 4, 69 L.Ed.2d at 775 & n. 4.

The Court reasoned that its prior cases suggested the generalization that the entire passenger compartment of an automobile was within the reach of an arrestee, thus rendering a search of that area reasonable under *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).

> Accordingly, we hold that when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile.

> It follows from this conclusion that the police may also examine the contents of any containers found within the passenger compartment, for if the passenger compartment is within reach of the arrestee, so also will containers in it be within his reach.

*Belton,* 453 U.S. at 460, 101 S.Ct. at 2864 (footnotes omitted). In the context of a search incident to a lawful arrest, the lawful custodial arrest justifies the invasion of the arrestee's privacy interests.

Justices Brennan and Marshall dissented, arguing that the Court had abandoned the underpinnings of *Chimel.* Justice White dissented separately to voice his belief that the *Belton* majority had worked too extreme an extension of *Chimel.*

This, then, was the status of search and seizure law in December 1981 when appellees were arrested and their briefcases searched. Although *Ross* would not be decided for another six months, the Supreme Court granted the writ of certiorari on October 13, 1981, and directed the parties to address the question whether the Court should reconsider *Robbins. United States v. Ross,* 454 U.S. 891, 102 S.Ct. 386, 70 L.Ed.2d 205 (1981).

In the case now before us, both the magistrate and the trial judge analyzed the warrantless search of the briefcases under the principles guiding searches incident to a valid arrest. In his oral recommendation the magistrate stated:

> This Court is going to recommend that the search of the briefcases be suppressed because this Court is of the opinion that the briefcases were in the possession of the DEA.

> It was after the arrest. They had not been searched before the arrest or during the arrest. It was searched after the arrest and there should have been a search warrant for those two briefcases.

Transcript of Suppression Hearing at 200.

Before the lower court, the Government argued that *Belton* clearly controlled. Had

the district court agreed with the magistrate's finding that the briefcases were in the passenger compartment, *Belton* would have governed the disposition of the case. The district court, however, determined that the briefcases were found not in the passenger compartment, but rather in the trunk. This distinguished appellees' situation from that in *Belton*. Accordingly, the district judge held that *Belton* was inapplicable, and that the magistrate was correct in suppressing the briefcase evidence.

On appeal, appellees contend that because the Government failed to argue the automobile exception to the warrant requirement it is estopped from asserting it now. As we noted above, the burden of excusing the failure to get a warrant falls upon the Government, which must point to the specific exception(s) under which it proceeded. In this case, the Government argued two exceptions: inventory searches and searches incident to a valid arrest.

█ Appellees correctly note that the automobile exception was not an issue in this case until *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), was decided on June 1, 1982, while this case was in the briefing stage on appeal. We reach the application of *Ross* to this case, despite the Government's failure to argue the automobile exception below, because the factual record necessary for resolution of the motion to suppress has been developed fully, and because scarce judicial resources would be wasted if we remanded the issue to the lower court for decision. Thus, we now turn to the Supreme Court's decision in *Ross*.

The Court's statement of the issue to be decided and its resolution of that question are set forth in the introductory paragraph of Justice Stevens's opinion for the majority:

In this case, we consider the extent to which police officers—who have legitimately stopped an automobile and who have probable cause to believe that con-

traband is concealed somewhere within it—may conduct a probing search of compartments and containers within the vehicle whose contents are not in plain view. We hold that they may conduct a search of the vehicle that is as thorough as a magistrate could authorize in a warrant "particularly describing the place to be searched."

*Ross*, 456 U.S. at 800, 102 S.Ct. at 2160, 72 L.Ed.2d at 578 (quoting U.S. Const. amend. IV).

In *Ross*, a confidential informant notified the District of Columbia Police that a person known as "Bandit" was dealing in narcotics from the trunk of his car, a maroon Chevrolet Malibu. After conducting surveillance of the area and determining that Ross was the owner of the car, the detectives stopped Ross as he was driving the vehicle. A pistol was found in the glove compartment, and Ross was arrested and handcuffed. Using keys appropriated from Ross, the detectives opened the trunk and discovered in a paper lunch bag glassine envelopes containing a white powder later determined to be heroin. A red zippered pouch also was seized. When it was opened later at the police station, officers discovered $3,200 in cash. The district court denied Ross's motion to suppress the evidence seized from the car trunk, and Ross was convicted of possession of heroin with intent to distribute, in violation of 21 U.S.C. § 841(a). The Supreme Court granted certiorari to reconsider its decision in *Robbins*.

The Court distinguished *Chadwick* and *Sanders* by noting that in neither of those cases did the law enforcement officials have probable cause to search the entire vehicle. In *Chadwick*, suspicion was focused only on the padlocked footlocker that was leaking talcum powder. In *Sanders*, the green suitcase was the object of agents' interest. In *Ross*, however, probable cause to search the *entire* vehicle was present. Thus, Justice Stevens reasoned, the factual situation of *Ross* was analogous to that presented in the Court's first case involving the automobile

exception, *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925).

The Court overruled *Robbins* because the *Robbins* plurality relied on *Chadwick* and *Sanders,* which were distinguishable. That portion of *Sanders* upon which *Robbins* was premised was also discarded by the Court.

*Ross* represents the Court's attempt to establish clear and ascertainable guidelines by which law enforcement officials may be governed. In delineating these guidelines, the Court ruled:

> The scope of a warrantless search of an automobile thus is not defined by the nature of the container in which the contraband is secreted. Rather, it is defined by the object of the search and the places in which there is probable cause to believe that it may be found.

*Ross,* 456 U.S. at 824, 102 S.Ct. at 2172, 72 L.Ed.2d at 593.

The agents in the instant case clearly had probable cause to believe that cocaine was secreted in the automobile because of the folded dollar bill discovered as Pupo exited the car. A substantial amount of cocaine can be carried in a normal size briefcase, and the totality of the surrounding circumstance afforded the agents ample reason to suspect that additional contraband could be found in the briefcases.

Appellees argue that *Ross* should not be applied retroactively to the facts of this case because, in their opinion, it represents a substantial break in fourth amendment law. This argument is foreclosed by the language of *Ross* itself:

> Moreover, it is clear that no legitimate reliance interest can be frustrated by our decision today.[33] Of greatest importance, we are convinced that the rule we apply in this case is faithful to the interpretation of the Fourth Amendment that the Court has followed with substantial consistency throughout our history.

*Ross,* 456 U.S. at 824, 102 S.Ct. at 2172, 72 L.Ed.2d at 593. Footnote 33 reads:

> Any interest in maintaining the status quo that might be asserted by persons who may have structured their business of distributing narcotics or other illicit substances on the basis of judicial precedents clearly would not be legitimate.

*Id.* n. 33. Thus, the majority discerned no retroactivity problems with its decision. *See also United States v. Johnson,* 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982); *Illinois v. Gates,* —— U.S. ——, ——, 103 S.Ct. 2317, 2361, 76 L.Ed.2d 527 (1983) (Stevens, J., dissenting); *United States v. Rollins,* 699 F.2d 530, 534 (11th Cir.1983).

The Supreme Court's decision in *Ross* that, "[i]f probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search," *Ross,* 456 U.S. at 825, 102 S.Ct. at 2173, 72 L.Ed.2d at 594, governs this case. Accordingly, we conclude that the district court erred in suppressing the evidence discovered in the briefcases. We REVERSE the district court's order and REMAND this case for trial upon the merits.