UNITED STATES of America

v.

**James Wylie MAJOR and Stephanie Simpson, Defendants.**

**No. 5:95–cr–44 (WDO).**

United States District Court, M.D. Georgia, Macon Division.

Feb. 6, 1996.

Beverly Martin, Asst. U.S. Atty., Macon, GA, for U.S.

Charles Erion, Macon, GA, for James Wylie Major.

Franklin Hogue, Criminal Justice Act Attorney, Macon, GA, for Stephanie Simpson.

## ORDER

OWENS, District Judge.

Before the court are motions of defendant Major to suppress evidence obtained as a result of searches of Major's vehicle, person and residence by agents of the Georgia Bureau of Investigation and to suppress the fruits of interception of wire or oral communications. Counsel for defendant Simpson has also adopted the motions on behalf of his client. The court heard the motions in open court at Macon, Georgia, on January 24, 1996. The only witness testifying was GBI Agent Christopher A. Bish. Based upon factual information submitted by Agent Bish, counsel for defendant Major stated that his motion pertaining to the oral interceptions had been based on his misunderstanding of the facts.

At the close of testimony and arguments the court asked the parties to submit additional authority relating to the search of the vehicle in which Mr. Major and Ms. Simpson were riding at the time they were arrested. The government has filed a supplemental brief relating to this issue. Also remaining at issue are defendants' motions pertaining to the validity of the searches of the residence and business.

After carefully considering all the evidence, the arguments of counsel, and the relevant caselaw, the court issues the following order.

Agent Bish testified that on the morning of August 10, 1995, law enforcement officials obtained warrants for the arrest of James Wylie Major and Stephanie Simpson. At the same time they obtained search warrants for the residence of Mr. Major and Ms. Simpson at 106 Flat Rock Road in Eatonton, Georgia, for Major's business at 10 Oak Street in Eatonton, and for "any vehicle in which they may occupy." Mr. Major had been under investigation for some years prior to this time for involvement in drug-related activities. Shortly before obtaining the warrants law enforcement officials had been privy to a monitored telephone conversation between a confidential informant and Mr. Major whereby the informant contacted Mr. Major and

arranged to make a $5,000 payment for illegal drugs.

Agent Bish testified that the transaction which was the subject of the monitored telephone conversation occurred on an exit ramp in Taliaferro County later in the day on August 10. GBI established surveillance of the location and observed the $5,000 transaction taking place. Agent Bish observed the transaction from a helicopter. After obtaining the money Mr. Major and Ms. Simpson proceeded from the location to Greene County. Law enforcement officials moved in and arrested them· pursuant to the arrest warrants they had obtained that morning. A search was conducted of the red pickup truck which Mr. Major and Ms. Simpson had been driving, and the $5,000 the confidential informant had given them as payment was found in a diaper bag in the truck. Additional sums totaling in the neighborhood of $40,000 were found elsewhere in the truck.

After the vehicle search was concluded Mr. Major's house keys were taken from him and the search warrant was executed at the residence at 106 Flat Rock Lane. Officers also executed the search warrant for Major's place of business at 107 Oak Street, which necessitated that they cut a padlock on the door. Agent Bish, who was not present at either search but arrived approximately an hour later, testified that it is the practice of GBI agents to knock before executing a warrant or to announce their presence at the time of entry when the warrant contains a no-knock provision. The search warrants at issue contained a no-knock provision; however, both Mr. Major and Ms. Simpson were in custody at the time the warrants were executed and thus could not have been present at either location where the searches were carried out.

Defendants argue that the warrant authorizing the search of "any vehicle in which they may occupy" was overly broad and maintain that the search was conducted outside the jurisdictional limit of the Putnam County Superior Court where the search warrant was issued. They further argue that there was no basis for the no-knock provision in the search warrant for Mr. Major's house and business, rendering the warrants overly broad even if the no-knock provision was not used.

## SEARCH OF VEHICLE

In their supplemental brief the government has assumed, without agreeing, that the search of the vehicle was warrantless. The government presents three separate analyses to support the validity of a warrantless search of defendants' vehicle under the facts of this case. The court agrees that any of the three grounds relied upon by the government would support a warrantless search of defendants' vehicle at the time of their arrest. Thus, it is not necessary to address the question of the defectiveness of the search warrant for the vehicle.

The first and most persuasive argument for a presumably warrantless search of defendants' vehicle is that the vehicle was searched pursuant to the lawful arrest of Mr. Major and Ms. Simpson. Upon conducting a lawful custodial arrest of the occupant of a vehicle an officer may contemporaneously search the passenger compartment of the vehicle and may examine the contents of any container found within the passenger compartment including the glove compartment as well as any luggage, boxes, bags, and so forth. *New York v. Belton,* 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981); *United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982); *United States v. Freire,* 710 F.2d 1515, 1523 (11th Cir.1983), *cert. denied,* 465 U.S. 1023, 104 S.Ct. 1277, 79 L.Ed.2d 681 (1984). When the law enforcement officers arrested Mr. Major and Ms. Simpson pursuant to valid warrants for their arrests, they were justified in searching the contents of the vehicle in which they were riding, including the diaper bag in which the $5,000 was found, the glove compartment, and other containers.

The search of the vehicle was also justified as an inventory search. The government has cited as authority for this analysis the cases of *South Dakota v. Opperman,* 428 U.S. 364, 369, 96 S.Ct. 3092, 3097, 49 L.Ed.2d 1000 (1976); *Colorado v. Bertine,* 479 U.S. 367, 376, 107 S.Ct. 738, 743, 93 L.Ed.2d 739 (1987); and *Sammons v. Taylor,*

967 F.2d 1533, 1543 (11th Cir.1992). These authorities hold that if a vehicle has been lawfully impounded the law enforcement officers may conduct an inventory search. There was no evidence produced in this case that there was anyone available to take custody of defendants' vehicle at the time of the arrest. Thus, the officers were justified in taking custody of the vehicle from the public location and in conducting an inventory search of its contents. "[T]he mere expectation of uncovering evidence will not vitiate an otherwise valid inventory search." *United States v. Roberson,* 897 F.2d 1092, 1096 (11th Cir.), *reh. denied,* 907 F.2d 1145 (1990), quoting *United States v. Prescott,* 599 F.2d 103, 106 (5th Cir.1979).

■ It is also the government's position that defendants lost all property rights in the vehicle at the time they engaged in the illegal transaction, thereby subjecting the vehicle to search and seizure. Under Georgia statute O.C.G.A. § 16–13–49(d)(2), pertaining to regulation of controlled substances, all property used directly or indirectly in order to facilitate a violation of the law is deemed to be contraband and subject to forfeiture. When property is subject to forfeiture for a violation of the law, title to the property vests absolutely in the government at the time of the illegal act. *English v. State,* 202 Ga.App. 751, 415 S.E.2d 659 (1992). The law enforcement officers had just witnessed Mr. Major and Ms. Simpson engaging in a transaction with a confidential informant in which payment for illegal drugs was obtained. Thus, the car was subject to forfeiture to the state, rendering the defendants with no property right in the vehicle or right to object to its search and seizure.

### SEARCH OF RESIDENCE AND BUSINESS

■ The affidavit for the search warrants in this case reveals ample justification for the Superior Court judge's determination of probable cause, including allegations of various monitored drug sales made by defendant Major, reliable information of confidential informants, and information obtained from the oral intercepts of the home and business telephones of Mr. Major. In *United States*

*v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the Supreme Court stated that "It is the Magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment." *Id.,* 468 U.S. at 921, 104 S.Ct. at 3419. Further, "[a] substantial basis for probable cause exists where the totality of the circumstances set forth in the affidavit provides sufficient information for a magistrate to determine that 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Gonzalez,* 940 F.2d 1413, 1419 (11th Cir.1991), citing *Illinois v. Gates,* 462 U.S. 213, 238–39, 103 S.Ct. 2317, 2332–33, 76 L.Ed.2d 527 (1983). The determination of probable cause is entitled to great deference. *Id.; United States v. Leon,* 468 U.S. 897, 923, 104 S.Ct. 3405, 3420, 82 L.Ed.2d 677 (1984).

■ The Supreme Court addressed the reasonableness of no-knock provisions in *Wilson v. Arkansas,* 514 U.S. ——, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995), in which the Court determined that the common-law principle that officers should knock and announce their presence before entering a dwelling is part of the Fourth Amendment reasonableness inquiry. The Court pointed out that "courts have indicated that unannounced entry may be justified where police officers have reason to believe that evidence would likely be destroyed if advance notice were given." *Wilson,* 514 U.S. at ——, 115 S.Ct. at 1915, 131 L.Ed.2d at 984. The charges of drug-related activities against Mr. Major and Ms. Simpson in the present case justified the reasonable conclusion of the Superior Court judge that the giving of advance notice by the officers could lead to the likely destruction of controlled substances or other related items. But, in any event, the no-knock provision is irrelevant in this situation because neither defendant was present when the searches were conducted. There is no legal requirement that the owners of property be present when it is searched, and police officers may enter unoccupied premises to execute a search warrant. *Payne v. United States,* 508 F.2d 1391, 1394 (5th Cir.), *cert.*

388

*denied,* 423 U.S. 933, 96 S.Ct. 287, 46 L.Ed.2d 263 (1975). It would be futile for officers to knock at the door of an unoccupied building in order to gain permission to enter. *Id.*

## CONCLUSION

In the court's considered judgment, there was ample probable cause for the search of defendants' vehicle even without a determination of whether the warrant authorizing such search was defective. In addition, probable cause existed for issuance of the search warrants for both the home and business premises. The no-knock provisions contained in said search warrants were reasonable under the facts of this case but were rendered irrelevant by the circumstance that both defendants were in custody when the searches were carried out.

Accordingly, defendants' motions to suppress are **DENIED.**