This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Defendant, Omondo Varner, appeals from his convictions in the Summit County Court of Common Pleas for possession of cocaine, having weapons while under a disability, and illegal use or possession of drug paraphernalia. We affirm.
{¶ 2} On December 26, 2001, the Summit County Grand Jury indicted Defendant on seven separate counts: (1) possession of cocaine with a major drug offender specification, in violation of R.C. 2925.11(A) and2941.1410; (2) illegal manufacture of drugs, in violation of R.C.2925.04(A); (3) possession of cocaine, in violation of R.C. 2925.11(A); (4) two counts of having weapons while under a disability, in violation of R.C. 2923.13(A)(2) and (3); (5) illegal use or possession of drug paraphernalia, in violation of R.C. 2925.14(C)(1); and (6) trafficking in cocaine, in violation of R.C. 2925.03(A)(1). The trafficking in cocaine charge was later dismissed. Thereafter, Defendant moved to suppress certain evidence retrieved by the State as a result of its search, namely, cocaine, scales, drug paraphernalia, cash, and various statements made by Defendant. The trial court denied Defendant's motion to suppress. A jury trial followed. Defendant moved for an acquittal, pursuant to Crim. R. 29(A), following the State's case-in-chief; however, Defendant failed to renew this motion following his case-in-chief. The jury found Defendant guilty of possession of cocaine, having weapons while under a disability, in violation of R.C. 2923.13(A)(2), and illegal use or possession of drug paraphernalia, and not guilty of illegal manufacture of drugs. The trial court sentenced Defendant accordingly. Defendant timely appeals and raises three assignments of error for review.
 ASSIGNMENT OF ERROR I
{¶ 3} "The trial court committed clear error by denying [Defendant's] motion to suppress evidence obtained in violation of [Defendant's fourth] amendment rights."
{¶ 4} In his first assignment of error, Defendant avers that the trial court erred in denying his motion to suppress because the police officers failed to satisfy the "knock and announce" requirement, codified at R.C. 2935.12, when executing the search warrant on 390 West Cedar Street. We disagree.
{¶ 5} When ruling on a motion to suppress, the trial court makes both factual and legal findings. State v. Jones, 9th Dist. No. 20810,2002-Ohio-1109, at ¶ 9. Accordingly, "the evaluation of evidence and the credibility of witnesses are issues for the trier of fact." Statev. Smith (1991), 61 Ohio St.3d 284, 288; State v. Hopfer (1996),112 Ohio App.3d 521, 548. It follows that an appellate court's review of a motion to suppress involves both questions of law and fact. State v.Long (1998), 127 Ohio App.3d 328, 332; State v. Nietfeld (Sept. 28, 2001), 3rd Dist. No. 2-01-05, 2001-Ohio-2285. Thus, an appellate court "is bound to accept factual determinations of the trial court made during the suppression hearing so long as they are supported by competent and credible evidence." State v. Searls (1997), 118 Ohio App.3d 739, 741;State v. Guysinger (1993), 86 Ohio App.3d 592, 594. However, an appellate court's review of the trial court's application of law to those facts is de novo. Searls, 118 Ohio App.3d at 741. See, also, Ornelas v. UnitedStates (1996), 517 U.S. 690, 699, 134 L.Ed.2d 911.
{¶ 6} R.C. 2935.12(A) provides in pertinent part:
{¶ 7} "When making an arrest *** or when executing a search warrant the *** law enforcement officer *** making the arrest or executing the warrant *** may break down an outer or inner door *** of a dwelling house or other building, if, after notice of his intention to make the arrest or to execute the warrant *** he is refused admittance[.]"
{¶ 8} The determination as to whether law enforcement officers properly complied with the "knock and announce" requirement comprises part of the reasonableness inquiry under the Fourth Amendment. Wilson v.Arkansas (1995), 514 U.S. 927, 934; 131 L.Ed.2d 976; State v. Dixon
(2001), 141 Ohio App.3d 654, 659-660. In making this determination, the adequacy of the law enforcement officer's pause after announcing his presence and before entering a home depends on the specific facts and circumstances of each case. Dixon, 141 Ohio App.3d at 660. Furthermore, in State v. Roper (1985), 27 Ohio App.3d 212, 213, this court stated that the "knock and announce" requirement of R.C. 2935.12 need not be strictly followed if exigent circumstances exist that require otherwise; specifically, "[i]f it appears that the evidence sought can and will be destroyed on short notice, or that compliance could place the officers in peril of great bodily harm, then the officers may deviate from strict compliance with R.C. 2935.12." Id.
{¶ 9} In the present case, Detective Donny Williams testified that he saw a man standing outside of the apartment at 390 West Cedar Street. He further testified that he saw the man walk into the house, but the man stood in the doorway. Detective Williams stated that as the SWAT team approached the apartment, the man slammed the door shut. Officer Jeffrey Ross also testified that he saw a man at the target apartment, and the front door was open. However, Officer Ross relayed that as the SWAT team exited the SCAT bus, the man closed the door. He further explained that he learned during briefing that guns had been inside the apartment and the residents had the possibility for violence. Finally, Officer Alan Jones asserted that the man standing in the doorway of the apartment slammed the front door of the apartment as the SWAT team approached. He additionally remarked that he learned that a gun was seen at the residence.
{¶ 10} From the testimony of the officers, it is evident that the man knew that the police officers were approaching the front door of the apartment with the intent to enter the residence. When he slammed the door as the officers approached, he demonstrated his intent not to allow the officers into the apartment. See State v. Roberts, 9th Dist. No. 21169,2003-Ohio-363, at ¶ 18 (finding that individual's attempt to slam the door and retreat into the home as officers approached his front door manifested his intent not to allow the police officers inside). We find that under these circumstances, the officers' failure to knock and announce their presence did not deprive Defendant of notice of the officers' presence or an opportunity to allow them to enter the apartment peaceably. Rather, if the officers had delayed, this would have permitted Defendant time to conceal or destroy evidence, secure a weapon, or flee the apartment. As exigent circumstances existed, the officers were not required to strictly comply with R.C. 2935.12, and their failure to knock and announce their presence before entering the apartment did not violate Defendant's Fourth Amendment rights. See Roper, 27 Ohio App.3d at 213. Therefore, Defendant's first assignment of error is overruled.
 ASSIGNMENT OF ERROR II
{¶ 11} "The verdicts finding [Defendant] guilty of possession of cocaine in violation of R.C. 2925.11(A) ***, having weapon[s] whie [sic.] under [a] disability in violation of R.C. 2923.13(A)(3), and illegal use or possession of drug paraphernalia in violation of R.C. 2925.14(C)(1), were against the manifest weight of the evidence."
{¶ 12} In his second assignment of error, Defendant challenges the adequacy of the evidence produced at trial. Specifically, Defendant avers that his convictions for possession of cocaine, having weapons while under a disability, and illegal use or possession of drug paraphernalia were based on insufficient evidence and against the manifest weight of the evidence. Defendant's assignments of error lack merit.
{¶ 13} As a preliminary matter, we note that the record indicates that Defendant moved for an acquittal in accordance with Crim.R. 29(A) after the State presented its case-in-chief; however, he failed to renew his motion for an acquittal after presenting his defense. Therefore, Defendant cannot challenge the sufficiency of the evidence underlying his convictions on appeal. See Dayton v. Rogers (1979), 60 Ohio St.2d 162,163, overruled on other grounds, 76 Ohio St.3d 261 (1996). Specifically, a "defendant who is tried before a jury and brings a Crim.R. 29(A) motion for acquittal at the close of the state's case waives any error in the denial of the motion if the defendant puts on a defense and fails to renew the motion for acquittal at the close of all the evidence." Statev. Miley (1996), 114 Ohio App.3d 738, 742, citing Dayton,60 Ohio St.2d at 163. See, also, State v. Childress (June 29, 1988), 9th Dist. No. 4320, at 3.
{¶ 14} We now turn to Defendant's challenge that his convictions were against the manifest weight of the evidence. "[A] manifest weight challenge questions whether the state has met its burden of persuasion."State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at 3, citing Statev. Thompkins (1997), 78 Ohio St.3d 380, 390 (Cook, J., concurring). When a defendant asserts that his conviction is against the manifest weight of the evidence, "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340. This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant.Id. Furthermore, the evaluation of the weight to be given to the evidence and evaluation of the credibility of the witnesses are functions primarily reserved for the trier of fact. State v. Gilliam (Aug. 12, 1998), 9th Dist. No. 97CA006757, at 4.
{¶ 15} Defendant was found guilty of possession of cocaine, in violation of R.C. 2925.11(A). R.C. 2925.11(A) provides that "[n]o person shall knowingly obtain, possess, or use a controlled substance." Additionally, Defendant was found guilty of being a "major drug offender," which is an "offender who is convicted of *** the possession of, sale of, or offer to sell any drug, compound, mixture, preparation, or substance that consists of or contains *** at least one hundred grams of crack cocaine [or] at least one thousand grams of cocaine that is not crack cocaine[.]" R.C. 2929.01(X).
{¶ 16} Defendant was also convicted of having weapons while under a disability, in violation of R.C. 2923.13(A)(2), which provides in relevant part: "[n]o person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if *** [t]he person is under [an] indictment for or has been convicted of any felony offense of violence[.]" Lastly, Defendant was convicted of illegal use or possession of drug paraphernalia, in violation of R.C. 2925.14(C)(1). R.C. 2925.14(C)(1) states that "[n]o person shall knowingly use, or possess with purpose to use, drug paraphernalia."
{¶ 17} In the present case, Defendant's argument focuses on whether he "possessed" the cocaine, gun, or drug paraphernalia that was found at the apartment. Particularly, Defendant contends that his convictions should be reversed because the State did not prove that he "possessed" the cocaine, gun, or drug paraphernalia. However, we find that there was ample evidence presented at trial to show that Defendant possessed the cocaine, gun, and drug paraphernalia.
{¶ 18} Possession is defined as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). R.C. 2901.21(D)(1) sets forth the requirements for criminal liability and provides: "Possession is a voluntary act if the possessor knowingly procured or received the thing possessed, or was aware of the possessor's control of the thing possessed for a sufficient time to have ended possession."
{¶ 19} "Possession may be actual or constructive." State v. Kobi
(1997), 122 Ohio App.3d 160, 174. Actual possession requires ownership or physical control. State v. Messer (1995), 107 Ohio App.3d 51, 56. Constructive possession requires immediate access to the weapon. Statev. Butler (1989), 42 Ohio St.3d 174, 176. Additionally, the courts have defined constructive possession as "knowingly exercis[ing] dominion and control over an object, even though [that] object may not be within his immediate physical possession." (Emphasis added.) State v. Hankerson
(1982), 70 Ohio St.2d 87, syllabus. See, also, State v. Wolery (1976),46 Ohio St.2d 316, 329. Circumstantial evidence is sufficient to support the element of constructive possession. See State v. Jenks (1991),61 Ohio St.3d 259, 272-73; See Butler, 42 Ohio St.3d at 176; Hankerson,70 Ohio St.2d 87 at syllabus. As such, readily usable drugs or other contraband in close proximity to a defendant may constitute sufficient and direct circumstantial evidence to support a finding of constructive possession. State v. Pruitt (1984), 18 Ohio App.3d 50, 58; Hamilton v.Barnett (Aug. 3, 1998), 12th Dist. No. CA97-11-222; State v. Williams
(Dec. 7, 2000), 8th Dist. No. 76816.
{¶ 20} At trial, Officer Jeffrey Ross and Detective Donny Williams both testified that they were members of the SWAT team that executed a search warrant on an apartment located at 390 West Cedar Street. They further testified that when they exited the SWAT bus they saw a man standing at the door, and when the SWAT team began their approach toward the apartment, the man slammed the door "in [their] face." Detective Williams outlined the items found in the apartment: (1) a box of Chore Boy scouring pads that contained new and used scouring pads; (2) a digital scale that had an ounce and gram scale; (3) a .9 millimeter gun; (4) a backpack, which contained 8.6 grams of cocaine; (5) a briefcase in a bedroom that contained paperwork belonging to Defendant; and (6) 133 grams of cooked crack cocaine in a large glass jar on the stove. Detective Williams explained the significance and use of the Chore Boy scouring pads. Specifically, he stated that Chore Boy scouring pads are often found in drug houses, and individuals who smoke crack cocaine "plug their pipes with" the scouring pads to allow the scouring pads to serve as "a filter in [the] pipe to keep the drugs from being sucked down the individual's throat when they are inhaling it." Further, Detective Williams asserted that the used scouring pads found in the box demonstrate that someone had been using them to "plug pipes." Finally, Detective Williams stated that Defendant was found hiding in the basement of the apartment behind the dryer.
{¶ 21} Sergeant Gerald Forney testified that he observed a glass jar on the stove containing cooked crack cocaine. He further stated that two-way radios were found and, based on his experience, these radios are often used for drug trafficking purposes to relay information regarding the need for more drugs. Sergeant Forney also testified that he observed a gun and its loaded magazine lying on the basement floor. He asserted that he saw a white substance splattered on the basement walls near the washer and dryer; he later learned that the white substance was cocaine. Sergeant Forney testified that he noticed bags of cocaine on the basement floor, and some of the bags were intact, while others were ripped. Lastly, he declared that he found $940.00 in Defendant's wallet.
{¶ 22} Detective Angela Lewis testified that she performed the surveillance of the apartment before the SWAT team arrived. She stated that she observed several individuals coming to the apartment and entering the apartment; she did observe some individuals leave the apartment. Detective Lewis testified concerning the items she discovered in the main level of the apartment, namely, a scale, an electronic organizer, and sandwich bags. She further testified that she discovered drug paraphernalia in the basement generally used for snorting powder cocaine or smoking crack cocaine. The items found include: rolling papers, a crack pipe, a spoon, Chore Boy scouring pads, and a razor blade. Detective Lewis also asserted that she found a .9 millimeter gun and its magazine in the basement. She maintained that the gun appeared to have "been thrown right next to the wall behind a table[;] *** it hadn't been laid down nicely." Detective Lewis stated that she saw powder cocaine spread throughout the basement and on the basement wall and floor "right next" to the washer and dryer. She also stated that she found two baggies of powder cocaine; one of the baggies contained 13.6 grams of cocaine and the other baggie contained 8 grams of cocaine. Detective Lewis noted that one of the baggies was broken open.
{¶ 23} Detective Alan Johnson testified that he initiated the investigation at 390 West Cedar Street. Through his investigation, Detective Johnson stated that he learned that Defendant, Tony Smith ("Smith"), and Quashane Varner resided at that residence. He stated that when the SWAT team arrived at the apartment to execute the search warrant, the man standing in the front door slammed the door when the SWAT team approached the apartment. Detective Johnson testified as to the statements made by Smith. In particular, he relayed that Smith "yelled out to [Defendant]" that "there was a white van outside and to get the stuff." Detective Johnson also testified that Defendant did not deny ownership of the money seized from his person, but did deny ownership of the "stuff."
{¶ 24} Michael Velten ("Velten") testified that he tested the substances seized from the apartment by the police. He positively concluded that the substances were cocaine. Additionally, Velten stated that the substance retrieved from the jar on the stove was also cocaine.
{¶ 25} Prior to resting, the State admitted a journal entry demonstrating that Defendant had prior convictions, namely, participating in a criminal gang, forgery, and possession of cocaine. Thereafter, Defendant testified that he did not reside at 390 West Cedar Street. However, he acknowledged that he ran into the basement when the police officers were trying to enter the apartment. Defendant explained that Smith instructed him to "get out of here." He also admitted that a gun, loaded magazine, and cocaine were found in the basement; however, he denied ownership of the gun and drugs. Defendant stated that cocaine had been splattered on the walls in the basement and cocaine was cooking on the stove in the kitchen. He asserted that the money the police seized from his person was his, and admitted that individuals usually obtain large amounts of cash from illegal activities. Finally, Defendant agreed that he had been convicted of participating in a criminal gang, possession of cocaine, and forgery.
{¶ 26} In the case sub judice, the jury had the opportunity to view the witnesses' testimony and adjudge their credibility; therefore, we must give deference to the jurors' judgments. See State v. Lawrence
(Dec. 1, 1999), 9th Dist. No. 98CA007118, at 13. Upon careful review of the testimony and evidence presented at trial, we hold that the jury did not act contrary to the manifest weight of the evidence in convicting Defendant of possession of cocaine, having weapons while under a disability, or illegal use or possession of drug paraphernalia. Accordingly, Defendant's second assignment of error is overruled.
 ASSIGNMENT OF ERROR III
{¶ 27} "[Defendant] was denied a fair trial in violation of his rights under the [sixth] amendment by prosecutorial misconduct."
{¶ 28} In his third assignment of error, Defendant argues that he was denied a fair trial as a result of the prosecutor's misrepresentations of the law and comments during closing argument. Defendant's argument lacks merit.
{¶ 39} During closing arguments, the prosecution is given wide latitude to convincingly advance its strongest arguments and positions.State v. Phillips (1995), 74 Ohio St.3d 72, 90; State v. Treesh (2001),90 Ohio St.3d 460, 466. Nevertheless, the prosecutor must avoid going beyond the evidence presented to the jury in order to obtain a conviction. State v. Smith (1984), 14 Ohio St.3d 13, 14.
{¶ 30} When a defendant alleges prosecutorial misconduct, an appellate court is required to determine whether the comments were improper and, if so, whether the remarks prejudicially affected the substantive rights of the defendant. Phillips, 74 Ohio St.3d at 90, citing Smith, 14 Ohio St.3d at 14. Further, an appellate court must examine the prosecution's closing argument in its entirety to determine whether the defendant was prejudiced by the prosecutor's comments.Treesh, 90 Ohio St.3d at 466; State v. Keenan (1993), 66 Ohio St.3d 402,410. Prosecutorial misconduct is not grounds for error unless the defendant has been denied a fair trial. State v. Maurer (1984),15 Ohio St.3d 239, 266. See, also, State v. Hill (1996), 75 Ohio St.3d 195,203, quoting Smith v. Phillips (1982), 455 U.S. 209, 219, 71 L.Ed.2d 78
("`[T]he touchstone of due-process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor'").
{¶ 31} In this case, Defendant has highlighted three instances which he contends rise to the level of prosecutorial misconduct, thereby denying him a fair trial. Specifically, Defendant contends that the prosecutor mischaracterized the law regarding constructive possession, erroneously characterized Defendant as a "drug-dealing `big dog[,]'" and improperly introduced "other-acts" evidence not presented at trial.
{¶ 32} However, in regard to Defendant's contentions regarding the prosecutor's mischaracterization of the law surrounding constructive possession and Defendant as a "drug-dealing `big dog[,]'" we find that Defendant has waived any error on appeal, as he failed to timely object to the prosecutor's comments during closing argument. See State v. Husk
(Nov. 26, 1980), 9th Dist. No. 9674, at 7, citing State v. Watson, (1971), 28 Ohio St.2d 15, 26; State v. Lott (1990), 51 Ohio St.3d 160,167; Villella v. Waikem Motors, Inc. (1989), 45 Ohio St.3d 36, 40; Statev. Dority (Mar. 31, 1998), 6th Dist. No. E-97-026; State v. Carter (Apr. 6, 1993), 3rd Dist. No. 9-92-56.
{¶ 33} We now turn to Defendant's contention that the prosecution improperly introduced "other-acts" evidence not presented at trial.
{¶ 34} Defendant argues that the prosecutor introduced evidence to insinuate Defendant's participation in gang activity, and this evidence served only to prejudice the jury. Particularly, the relevant portion of the closing argument reads:
{¶ 35} "You heard testimony that Tony Smith said [Defendant] was sleeping in his room last night.
{¶ 36} "And you are going to be able to look through that evidence and you are going to see if [Defendant] wasn't living there, why does he have copies of his paychecks? Why does he have a picture of himself holding up gang signs with his brother in it? Why does he have that stuff?
{¶ 37} "[Defense attorney]: Objection, Your Honor.
{¶ 38} "The Court: Overruled. This is closing argument.
{¶ 39} "The jury will determine whether or not the exhibit shows what the attorneys indicated.
{¶ 40 "[Prosecuting attorney]: Look at the picture. You have been looking at him for three days.
{¶ 41 "Why is his probation officer's card in there? Why is his various paperwork in there? Why?
{¶ 42 "Because he stays over there. They saw him over there. He was a target at 390 West Cedar."
{¶ 43 Upon a review of the closing argument, we do not find that the prosecutor's comment "Why does he have a picture of himself holding up gang signs with his brother in it?" was in an attempt to insinuate Defendant's participation in a gang. Rather, when viewing the closing argument in its entirety, the prosecutor's statement was to demonstrate that Defendant resided at 390 West Cedar Street and, therefore, the aforementioned comment was not improper. See Treesh,90 Ohio St.3d at 466; Keenan, 66 Ohio St.3d at 410. Notwithstanding our determination that the prosecutor's comment was not improper, we also find that Defendant was not prejudiced by this comment, as he testified on direct examination that he had been charged with participating in a criminal gang and the State was permitted to introduce into evidence a journal entry demonstrating that Defendant had a prior conviction for participating in a criminal gang. Accordingly, Defendant's third assignment of error is overruled.
{¶ 44 Defendant's assignments of error are overruled. The convictions of the Summit County Court of Common Pleas are affirmed.
WHITMORE, J. CONCURS.
CARR, J. CONCURS IN JUDGMENT ONLY.