## WILSON *v.* ARKANSAS

No. 94–5707.   Argued March 28, 1995—Decided May 22, 1995

THOMAS, J., delivered the opinion for a unanimous Court.

*John Wesley Hall, Jr.*, argued the cause and filed briefs for petitioner.

*Winston Bryant*, Attorney General of Arkansas, argued the cause for respondent. With him on the briefs were *Kent G. Holt, Vada Berger*, and *David R. Raupp*, Assistant Attorneys General, and *Andrew D. Leipold*.

*Deputy Solicitor General Dreeben* argued the cause for the United States as *amicus curiae* urging affirmance. With him on the brief were *Solicitor General Days, Assistant Attorney General Harris, Paul A. Engelmayer*, and *Deborah Watson*.*

---

*\*Tracey Maclin, Steven R. Shapiro*, and *Ephraim Margolin* filed a brief for the American Civil Liberties Union et al. as *amicus curiae* urging reversal.

Briefs of *amici curiae* urging affirmance were filed for the State of California et al. by *Daniel E. Lungren*, Attorney General of California, *Richard Rochman*, Assistant Attorney General, and *Eleni M. Constantine*, and by the Attorneys General for their respective jurisdictions as follows: *Jeff Sessions* of Alabama, *Grant Woods* of Arizona, *Gale A. Norton* of Colorado, *M. Jane Brady* of Delaware, *Robert A. Butterworth* of Florida, *Margery S. Bronster* of Hawaii, *Alan G. Lance* of Idaho, *Jim Ryan* of Illinois, *Tom Miller* of Iowa, *Carla J. Stovall* of Kansas, *Chris Gorman* of Kentucky, *Andrew Ketterer* of Maine, *J. Joseph Curran, Jr.*, of Maryland, *Frank J. Kelley* of Michigan, *Mike Moore* of Mississippi, *Jeremiah W. "Jay" Nixon* of Missouri, *Joseph P. Mazurek* of Montana, *Don Stenberg* of Nebraska, *Frankie Sue Del Papa* of Nevada, *Deborah T. Poritz* of New Jersey, *Dennis C. Vacco* of New York, *Michael F. Easley* of North Carolina, *Betty Montgomery* of Ohio, *Theodore R. Kulongoski* of Oregon, *Jeffrey B. Pine* of Rhode Island, *Charlie Condon* of South Carolina, *Mark Bennett* of South Dakota, *Dan Morales* of Texas, *Jan Graham* of Utah, *Jeffrey L. Amestoy* of Vermont, and *James S. Gilmore III* of Virginia; for Wayne County, Michigan, by *John D. O'Hair* and *Timothy A. Baughman;* and for Americans for Effective Law Enforcement, Inc., et al. by *Fred E. Inbau, Wayne W. Schmidt, James P. Manak, Richard M. Weintraub, Robert L. Deschamps*, and *Bernard J. Farber*.

JUSTICE THOMAS delivered the opinion of the Court.

At the time of the framing, the common law of search and seizure recognized a law enforcement officer's authority to break open the doors of a dwelling, but generally indicated that he first ought to announce his presence and authority. In this case, we hold that this common-law "knock and announce" principle forms a part of the reasonableness inquiry under the Fourth Amendment.

## I

During November and December 1992, petitioner Sharlene Wilson made a series of narcotics sales to an informant acting at the direction of the Arkansas State Police. In late November, the informant purchased marijuana and methamphetamine at the home that petitioner shared with Bryson Jacobs. On December 30, the informant telephoned petitioner at her home and arranged to meet her at a local store to buy some marijuana. According to testimony presented below, petitioner produced a semiautomatic pistol at this meeting and waved it in the informant's face, threatening to kill her if she turned out to be working for the police. Petitioner then sold the informant a bag of marijuana.

The next day, police officers applied for and obtained warrants to search petitioner's home and to arrest both petitioner and Jacobs. Affidavits filed in support of the warrants set forth the details of the narcotics transactions and stated that Jacobs had previously been convicted of arson and firebombing. The search was conducted later that afternoon. Police officers found the main door to petitioner's home open. While opening an unlocked screen door and entering the residence, they identified themselves as police officers and stated that they had a warrant. Once inside the home, the officers seized marijuana, methamphetamine, valium, narcotics paraphernalia, a gun, and ammunition. They also found petitioner in the bathroom, flushing marijuana down the toilet. Petitioner and Jacobs were arrested and

charged with delivery of marijuana, delivery of methamphetamine, possession of drug paraphernalia, and possession of marijuana.

Before trial, petitioner filed a motion to suppress the evidence seized during the search. Petitioner asserted that the search was invalid on various grounds, including that the officers had failed to "knock and announce" before entering her home. The trial court summarily denied the suppression motion. After a jury trial, petitioner was convicted of all charges and sentenced to 32 years in prison.

The Arkansas Supreme Court affirmed petitioner's conviction on appeal. 317 Ark. 548, 878 S. W. 2d 755 (1994). The court noted that "the officers entered the home *while they were identifying themselves*," but it rejected petitioner's argument that "the Fourth Amendment requires officers to knock and announce prior to entering the residence." *Id.*, at 553, 878 S. W. 2d, at 758 (emphasis added). Finding "no authority for [petitioner's] theory that the knock and announce principle is required by the Fourth Amendment," the court concluded that neither Arkansas law nor the Fourth Amendment required suppression of the evidence. *Ibid.*

We granted certiorari to resolve the conflict among the lower courts as to whether the common-law knock and announce principle forms a part of the Fourth Amendment reasonableness inquiry.[1] 513 U. S. 1014 (1995). We hold that it does, and accordingly reverse and remand.

---

[1] See, *e. g.*, *People* v. *Gonzalez*, 211 Cal. App. 3d 1043, 1048, 259 Cal. Rptr. 846, 848 (1989) ("Announcement and demand for entry at the time of service of a search warrant [are] part of Fourth Amendment reasonableness"); *People* v. *Saechao*, 129 Ill. 2d 522, 531, 544 N. E. 2d 745, 749 (1989) ("[T]he presence or absence of such an announcement is an important consideration in determining whether subsequent entry to arrest or search is constitutionally reasonable") (internal quotation marks omitted); *Commonwealth* v. *Goggin*, 412 Mass. 200, 202, 587 N. E. 2d 785, 787 (1992) ("Our knock and announce rule is one of common law which is not constitutionally compelled").

## II

The Fourth Amendment to the Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." In evaluating the scope of this right, we have looked to the traditional protections against unreasonable searches and seizures afforded by the common law at the time of the framing. See *California* v. *Hodari D.*, 499 U. S. 621, 624 (1991); *United States* v. *Watson*, 423 U. S. 411, 418–420 (1976); *Carroll* v. *United States*, 267 U. S. 132, 149 (1925). "Although the underlying command of the Fourth Amendment is always that searches and seizures be reasonable," *New Jersey* v. *T. L. O.*, 469 U. S. 325, 337 (1985), our effort to give content to this term may be guided by the meaning ascribed to it by the Framers of the Amendment. An examination of the common law of search and seizure leaves no doubt that the reasonableness of a search of a dwelling may depend in part on whether law enforcement officers announced their presence and authority prior to entering.

Although the common law generally protected a man's house as "his castle of defence and asylum," 3 W. Blackstone, Commentaries *288 (hereinafter Blackstone), common-law courts long have held that "when the King is party, the sheriff (if the doors be not open) may break the party's house, either to arrest him, or to do other execution of the K[ing]'s process, if otherwise he cannot enter." *Semayne's Case*, 5 Co. Rep. 91a, 91b, 77 Eng. Rep. 194, 195 (K. B. 1603). To this rule, however, common-law courts appended an important qualification:

> "But before he breaks it, he ought to signify the cause of his coming, and to make request to open doors . . . , for the law without a default in the owner abhors the destruction or breaking of any house (which is for the habitation and safety of man) by which great damage and inconvenience might ensue to the party, when no

default is in him; for perhaps he did not know of the process, of which, if he had notice, it is to be presumed that he would obey it . . . ." *Ibid.*, 77 Eng. Rep., at 195–196.

See also *Case of Richard Curtis*, Fost. 135, 137, 168 Eng. Rep. 67, 68 (Crown 1757) ("[N]o precise form of words is required in a case of this kind. It is sufficient that the party hath notice, that the officer cometh not as a mere trespasser, but claiming to act under a proper authority . . ."); *Lee* v. *Gansell*, Lofft 374, 381–382, 98 Eng. Rep. 700, 705 (K. B. 1774) ("[A]s to the outer door, the law is now clearly taken" that it is privileged; but the door may be broken "when the due notification and demand has been made and refused").[2]

Several prominent founding-era commentators agreed on this basic principle. According to Sir Matthew Hale, the "constant practice" at common law was that "the officer may break open the door, if he be sure the offender is there, if after acquainting them of the business, and demanding the prisoner, he refuses to open the door." See 1 M. Hale, Pleas of the Crown *582. William Hawkins propounded a similar principle: "the law doth never allow" an officer to break open the door of a dwelling "but in cases of necessity," that is, unless he "first signify to those in the house the cause of his coming, and request them to give him admittance." 2 W. Hawkins, Pleas of the Crown, ch. 14, § 1, p. 138 (6th ed. 1787).

___

[2] This "knock and announce" principle appears to predate even *Semayne's Case*, which is usually cited as the judicial source of the common-law standard. *Semayne's Case* itself indicates that the doctrine may be traced to a statute enacted in 1275, and that at that time the statute was "but an affirmance of the common law." 5 Co. Rep., at 91b, 77 Eng. Rep., at 196 (referring to 3 Edw. I, ch. 17, in 1 Statutes at Large from Magna Carta to Hen. 6 (O. Ruffhead ed. 1769) (providing that if any person takes the beasts of another and causes them "to be driven into a Castle or Fortress," if the sheriff makes "solem[n] deman[d]" for deliverance of the beasts, and if the person "did not cause the Beasts to be delivered incontinent," the King "shall cause the said Castle or Fortress to be beaten down without Recovery")).

Sir William Blackstone stated simply that the sheriff may "justify breaking open doors, if the possession be not quietly delivered." 3 Blackstone *412.

The common-law knock and announce principle was woven quickly into the fabric of early American law. Most of the States that ratified the Fourth Amendment had enacted constitutional provisions or statutes generally incorporating English common law, see, *e. g.*, N. J. Const. of 1776, §22, in 5 Federal and State Constitutions 2598 (F. Thorpe ed. 1909) ("[T]he common law of England . . . shall still remain in force, until [it] shall be altered by a future law of the Legislature"); N. Y. Const. of 1777, Art. 35, in *id.*, at 2635 ("[S]uch parts of the common law of England . . . as . . . did form the law of [New York on April 19, 1775] shall be and continue the law of this State, subject to such alterations and provisions as the legislature of this State shall, from time to time, make concerning the same"); Ordinances of May 1776, ch. 5, §6, in 9 Statutes at Large of Virginia 127 (W. Hening ed. 1821) ("[T]he common law of England . . . shall be the rule of decision, and shall be considered as in full force, until the same shall be altered by the legislative power of this colony"), and a few States had enacted statutes specifically embracing the common-law view that the breaking of the door of a dwelling was permitted once admittance was refused, see, *e. g.*, Act of Nov. 8, 1782, ch. 15, ¶6, in Acts and Laws of Massachusetts 193 (1782); Act of Apr. 13, 1782, ch. 39, §3, in 1 Laws of the State of New York 480 (1886); Act of June 24, 1782, ch. 317, §18, in Acts of the General Assembly of New-Jersey (1784) (reprinted in The First Laws of the State of New Jersey 293–294 (J. Cushing comp. 1981)); Act of Dec. 23, 1780, ch. 925, §5, in 10 Statutes at Large of Pennsylvania 255 (J. Mitchell & H. Flanders comp. 1904). Early American courts similarly embraced the common-law knock and announce principle. See, *e. g.*, *Walker* v. *Fox*, 32 Ky. 404, 405 (1834); *Burton* v. *Wilkinson*, 18 Vt. 186, 189 (1846); *Howe* v. *Butterfield*, 58 Mass. 302, 305 (1849). See generally Blakey, The

Rule of Announcement and Unlawful Entry, 112 U. Pa. L. Rev. 499, 504–508 (1964) (collecting cases).

Our own cases have acknowledged that the common-law principle of announcement is "embedded in Anglo-American law," *Miller* v. *United States*, 357 U. S. 301, 313 (1958), but we have never squarely held that this principle is an element of the reasonableness inquiry under the Fourth Amendment.[3] We now so hold. Given the longstanding common-law endorsement of the practice of announcement, we have little doubt that the Framers of the Fourth Amendment thought that the method of an officer's entry into a dwelling was among the factors to be considered in assessing the reasonableness of a search or seizure. Contrary to the decision below, we hold that in some circumstances an officer's unannounced entry into a home might be unreasonable under the Fourth Amendment.

This is not to say, of course, that every entry must be preceded by an announcement. The Fourth Amendment's flexible requirement of reasonableness should not be read to mandate a rigid rule of announcement that ignores countervailing law enforcement interests. As even petitioner concedes, the common-law principle of announcement was never stated as an inflexible rule requiring announcement under all circumstances. See *Ker* v. *California*, 374 U. S. 23, 38 (1963) (plurality opinion) ("[I]t has been recognized from the early common law that . . . breaking is permissible in executing an arrest under certain circumstances"); see also, *e. g.*,

---

[3] In *Miller*, our discussion focused on the statutory requirement of announcement found in 18 U. S. C. § 3109 (1958 ed.), not on the constitutional requirement of reasonableness. See 357 U. S., at 306, 308, 313. See also *Sabbath* v. *United States*, 391 U. S. 585, 591, n. 8 (1968) (suggesting that both the "common law" rule of announcement and entry and its "exceptions" were codified in § 3109); *Ker* v. *California*, 374 U. S. 23, 40–41 (1963) (plurality opinion) (reasoning that an unannounced entry was reasonable under the "exigent circumstances" of that case, without addressing the antecedent question whether the lack of announcement might render a search unreasonable under other circumstances).

*White & Wiltsheire,* 2 Rolle 137, 138, 81 Eng. Rep. 709, 710
(K. B. 1619) (upholding the sheriff's breaking of the door of
the plaintiff's dwelling after the sheriff's bailiffs had been
imprisoned in plaintiff's dwelling while they attempted an
earlier execution of the seizure); *Pugh* v. *Griffith,* 7 Ad. & E.
827, 840–841, 112 Eng. Rep. 681, 686 (K. B. 1838) (holding
that "the necessity of a demand . . . is obviated, because there
was nobody on whom a demand could be made" and noting
that *White & Wiltsheire* leaves open the possibility that
there may be "other occasions where the outer door may be
broken" without prior demand).

Indeed, at the time of the framing, the common-law admo-
nition that an officer "ought to signify the cause of his com-
ing," *Semayne's Case,* 5 Co. Rep., at 91b, 77 Eng. Rep., at
195, had not been extended conclusively to the context of
felony arrests.   See Blakey, *supra,* at 503 ("The full scope of
the application of the rule in criminal cases . . . was never
judicially settled"); *Launock* v. *Brown,* 2 B. & Ald. 592, 593,
106 Eng. Rep. 482, 483 (K. B. 1819) ("It is not at present
necessary for us to decide how far, in the case of a person
charged with felony, it would be necessary to make a previ-
ous demand of admittance before you could justify breaking
open the outer door of his house"); W. Murfree, Law of Sher-
iffs and Other Ministerial Officers § 1163, p. 631 (1st ed. 1884)
("[A]lthough there has been some doubt on the question, the
better opinion seems to be that, in cases of felony, no demand
of admittance is necessary, especially as, in many cases, the
delay incident to it would enable the prisoner to escape").
The common-law principle gradually was applied to cases in-
volving felonies, but at the same time the courts continued
to recognize that under certain circumstances the presump-
tion in favor of announcement necessarily would give way to
contrary considerations.

Thus, because the common-law rule was justified in part
by the belief that announcement generally would avoid "the
destruction or breaking of any house . . . by which great

damage and inconvenience might ensue," *Semayne's Case, supra,* at 91b, 77 Eng. Rep., at 196, courts acknowledged that the presumption in favor of announcement would yield under circumstances presenting a threat of physical violence. See, *e. g., Read* v. *Case,* 4 Conn. 166, 170 (1822) (plaintiff who "had resolved . . . to resist even to the shedding of blood . . . was not within the reason and spirit of the rule requiring notice"); *Mahomed* v. *The Queen,* 4 Moore 239, 247, 13 Eng. Rep. 293, 296 (P. C. 1843) ("While he was firing pistols at them, were they to knock at the door, and to ask him to be pleased to open it for them? The law in its wisdom only requires this ceremony to be observed when it possibly may be attended with some advantage, and may render the breaking open of the outer door unnecessary"). Similarly, courts held that an officer may dispense with announcement in cases where a prisoner escapes from him and retreats to his dwelling. See, *e. g., ibid.; Allen* v. *Martin,* 10 Wend. 300, 304 (N. Y. Sup. Ct. 1833). Proof of "demand and refusal" was deemed unnecessary in such cases because it would be a "senseless ceremony" to require an officer in pursuit of a recently escaped arrestee to make an announcement prior to breaking the door to retake him. *Id.,* at 304. Finally, courts have indicated that unannounced entry may be justified where police officers have reason to believe that evidence would likely be destroyed if advance notice were given. See *Ker, supra,* at 40–41 (plurality opinion); *People* v. *Maddox,* 46 Cal. 2d 301, 305–306, 294 P. 2d 6, 9 (1956).

We need not attempt a comprehensive catalog of the relevant countervailing factors here. For now, we leave to the lower courts the task of determining the circumstances under which an unannounced entry is reasonable under the Fourth Amendment. We simply hold that although a search or seizure of a dwelling might be constitutionally defective if police officers enter without prior announcement, law enforcement interests may also establish the reasonableness of an unannounced entry.

## III

Respondent contends that the judgment below should be affirmed because the unannounced entry in this case was justified for two reasons. First, respondent argues that police officers reasonably believed that a prior announcement would have placed them in peril, given their knowledge that petitioner had threatened a government informant with a semiautomatic weapon and that Mr. Jacobs had previously been convicted of arson and firebombing. Second, respondent suggests that prior announcement would have produced an unreasonable risk that petitioner would destroy easily disposable narcotics evidence.

These considerations may well provide the necessary justification for the unannounced entry in this case. Because the Arkansas Supreme Court did not address their sufficiency, however, we remand to allow the state courts to make any necessary findings of fact and to make the determination of reasonableness in the first instance. The judgment of the Arkansas Supreme Court is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.[4]

*It is so ordered.*

---

[4] Respondent and its *amici* also ask us to affirm the denial of petitioner's suppression motion on an alternative ground: that exclusion is not a constitutionally compelled remedy where the unreasonableness of a search stems from the failure of announcement. Analogizing to the "independent source" doctrine applied in *Segura* v. *United States*, 468 U. S. 796, 805, 813–816 (1984), and the "inevitable discovery" rule adopted in *Nix* v. *Williams*, 467 U. S. 431, 440–448 (1984), respondent and its *amici* argue that any evidence seized after an unreasonable, unannounced entry is causally disconnected from the constitutional violation and that exclusion goes beyond the goal of precluding any benefit to the government flowing from the constitutional violation. Because this remedial issue was not addressed by the court below and is not within the narrow question on which we granted certiorari, we decline to address these arguments.