**UNITED STATES of America Plaintiff–Appellee,**

v.

**Larry D. DAWKINS Defendant–Appellant.**

**No. 01–6151.**

United States Court of Appeals, Sixth Circuit.

Nov. 24, 2003.

Victor L. Ivy, Asst. U.S. Attorney, James W. Powell, Asst. U.S. Attorney, U.S. Attorney's Office, Jackson, TN, for Plaintiff–Appellee.

Stephen B. Shankman, Fed. Public Defender, M. Dianne Smothers, J. Patten Brown, III, Asst. F.P. Defender, Office of the Federal Public Defender, Memphis, TN, for Defendant–Appellant.

Before BATCHELDER and ROGERS, Circuit Judges; and RUSSELL, District Judge.*

RUSSELL, District Judge.

Following a search of Larry Dawkins's apartment on July 12, 2000 pursuant to a warrant, a federal grand jury in the Western District of Tennessee returned an indictment charging Dawkins with possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g). Dawkins filed a motion to suppress on December 27, 2000. After holding an evidentiary hearing on January 5 and 8, 2001, the district court granted in part and denied in part the motion to suppress. Dawkins entered a conditional change of plea to guilty to the one-count indictment on January 9, 2001. On August 24, 2001, Dawkins was sentenced to 120 months imprisonment and 3 years of supervised release. Dawkins timely filed his notice of appeal on September 10, 2001.

### BACKGROUND

On July 12, 2000, Officer Frank Kelsey of the Jackson, Tennessee Police Department obtained a search warrant for the residence of Larry Dawkins. Judge Joseph C. Morris of the Madison County, Tennessee Chancery Court issued the warrant, which permitted the officers to search for firearms and ammunition. The warrant was supported by an affidavit, which stated that a confidential informant had been present in Dawkins's residence in the last two weeks and observed Dawkins—a convicted felon—in possession of "several firearms to include rifles." The affidavit also stated that another law enforcement officer received information from two other reliable informants who stated that Dawkins "is frequently in possession of weapons and will maintain them at his residence." Kelsey testified that he was aware that there would "more than likely be" an AK–47 at the residence, and very possibly handguns. Kelsey also testified that he knew prior to the search that Dawkins had previously been convicted of facilitation of first degree murder. At the briefing of the officers prior to the execution of the warrant, the officers were also informed that Dawkins was a suspected gang member.

The warrant was issued at approximately 7 p.m. and was executed approximately three hours later by Lieutenant Mike Siler and five other members of the Jackson Police Department's Tactical Unit. Dawkins's apartment was at the top of a narrow staircase. Upon reaching the apartment, Lieutenant Siler pounded on the door several times while announcing, "Police. Search warrant." After waiting for what Lieutenant Siler characterized as "at least 15 seconds," the officers forced entry with a one-man battering ram. The officers then deployed a diversionary device, commonly known as a flash-bang, which emits a loud bang and a bright flash of light. Its purpose, according to Lieutenant Siler, is "to bring about a peaceful resolution of the situation[,] .... allow[ing] the entry team to get inside the residence with the greatest possibility of not having shots fired on them as they enter the door and them having to return fire." *See also United States v. Yarbrough,* 65 Fed.Appx. 539, 541 n. 1 (6th Cir.2003) ("A 'flashbang' creates a bright flash of light and a very loud noise; its purpose is to stun and disorient any occupants of premises to be searched."). The flash-bang hit a penny jar, which shattered

---

* Honorable Thomas B. Russell, United States District Judge for the Western District of Kentucky, sitting by designation.

and injured one of the officers. While Lieutenant Siler assisted the injured officer, the remaining officers entered the apartment and found Dawkins in a prone position in the kitchen, where he was secured by Officer Slack.

Dawkins informed the officers that he had a "hunting rifle" in the closet in the bedroom that belonged to his wife's father. The officers recovered a MAADI MISR 7.62 × 39 millimeter caliber rifle with a thirty round clip of ammunition from the bedroom. The officers then commenced a thorough search of the apartment, removing vent covers, emptying cereal boxes, removing the smoke detector and doorbell, and leaving the place "a mess." In justifying the level of intrusion, Officer Dyer testified that removing vent covers is "common practice because weapons or ammo or anything could be hidden in those vents." Officer Hallenback suggested that they generally go through food items, because these are common hiding places, and "[a] pistol could be hidden inside a cereal box[.]" The officers ultimately seized the rifle and ammunition, cell phones, a social security card, a birth certificate, mail, photographs, marijuana residue, and scales.

Dawkins moved to suppress the seized evidence prior to trial. At an evidentiary hearing, Dawkins called Tracie Davis, his second cousin, with whom he had lived until February 2000. Ms. Davis testified that she began having contact with Sergeant Hallenback as an informant in May 2000. She testified that Hallenback had questioned her about Dawkins's whereabouts and in particular about his drugs. Dawkins also called Orlando Hale, who is also a cousin of Mr. Dawkins. Mr. Hale stated that he spoke with an officer at the scene, who told him that "all we know is somebody came to our division earlier today and said there was going to be a drug bust, and that's what we're here for." Mr.

Hale also stated that he saw a utility man "messing with something in the ground" before any officers arrived, and that when he went up to Dawkins's apartment after the search the water was off.

In response to a pre-trial motion, Judge Todd granted Dawkins's motion to suppress all the evidence obtained that was not mentioned in the warrant, but denied the motion to suppress regarding the rifle and ammunition. Dawkins then pled guilty (reserving his right to appeal the pretrial motion) and was sentenced to 120 months imprisonment. This appeal followed.

## ANALYSIS

In reviewing a motion to suppress, this court reviews factual findings for clear error and legal determinations *de novo. United States v. Williams*, 962 F.2d 1218, 1221 (6th Cir.1992). "The reviewing court is to review the evidence 'in the light most likely to support the district court's decision.'" *Id.*

In the absence of exigent circumstances, the Fourth Amendment requires police entering a dwelling pursuant to search warrants to comply with the common law knock and announce rule. *Wilson v. Arkansas*, 514 U.S. 927, 929, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995). Under the rule, an officer must identify himself as a law enforcement officer with a warrant. Following this announcement, the officer may break into the dwelling only after waiting a reasonable amount of time. *United States v. Spikes*, 158 F.3d 913, 925 (6th Cir.1998). What constitutes a "reasonable" amount of time between announcement and entry is a fact-intensive inquiry that cannot be "distilled into a constitutional stop-watch where a fraction of a second assumes controlling significance." *Id.* at 926. Instead, the inquiry is guided by the "flexible requirement of reasonable-

ness." *Id.* (quoting *Wilson,* 514 U.S. at 934, 115 S.Ct. 1914).

■ Viewing the circumstances of this case against the backdrop of "reasonableness," there is little doubt that the officers sufficiently complied with the knock and announce rule. The officers knocked repeatedly and announced "Police. Search Warrant." At the time of the entry, the officers were aware that Dawkins may have possessed an AK–47, a weapon capable of firing rounds that could penetrate bullet-proof vests. The officers were also aware that Dawkins had previously been convicted of a violent felony and that he was a suspected gang member. Armed with this information, the officers broke the door open after waiting at least 15 seconds. This time was reasonable; "the officers did not need to wait long enough for a barrage of bullets from within before concluding that they had given the occupants enough time to respond to their request for entry." *Spikes,* 158 F.3d at 926.

■ Dawkins next argues that the Government's use of a flash-bang violated his Fourth Amendment rights. The use of a flash-bang is "neither per se objectively reasonable nor unreasonable." *Kirk v. Watkins,* 182 F.3d 932 (table), 1999 WL 381119, at *3 (10th Cir. June 11, 1999). Instead, the reasonableness of the device's use-much like the reasonableness of the officers' wait prior to entry—depends upon the facts and circumstances of each case. *See United States v. Folks,* 236 F.3d 384, 387–88 (7th Cir.2001); *United States v. Myers,* 106 F.3d 936, 940 (10th Cir.1997). Under the circumstances of the present case, we find the officers' use of the flash-bang diversionary device to be objectively

reasonable. The officers knew both that the suspect possessed an assault rifle and that he had previously been convicted of a crime of violence. Neither Mr. Dawkins nor anyone else in the residence was injured by the flash-bang.[1] Although Mr. Dawkins suffered some property damage from the device's use (the shattered penny jar, a dented file cabinet, and burn marks on the floor), this damage does not create a Fourth Amendment violation. Rather, the appropriate remedy, if any, for this damage lies in tort. *Folks,* 236 F.3d at 388; *United States v. Jones,* 214 F.3d 836, 838 (7th Cir.2000).

The court is mindful that the use of flash-bang devices will be inappropriate in many cases. *See, e.g., Molina v. Cooper,* 325 F.3d 963, 973 & n. 6 (7th Cir.2003); *Watkins,* 1999 WL 381119, at *4; *Meyers,* 106 F.3d at 940; *Jenkins v. Wood,* 81 F.3d 988, 996–98 (10th Cir.1996) (Henry, J., concurring). But where, as here, the officers had evidence that a violent felon possessed high-powered weapons, it would strain credulity to find that the Fourth Amendment's reasonableness requirement precluded the officers from using a device intended to reduce the risks to all parties associated with entry.

Dawkins's final contention is that the officers violated his Fourth Amendment rights by conducting a general search, which exceeded the limitations of the warrant. Unquestionably, general searches are prohibited by the Fourth Amendment's requirement that warrants particularly describe the things to be seized during the search. *Marron v. United States,* 275 U.S. 192, 196, 48 S.Ct. 74, 72 L.Ed. 231 (1927). However, "[a] search does not become invalid merely because some items not covered by a warrant are seized."

---

1. The fact that the flash-bang's detonation caused an injury to one of the officers is irrelevant to the inquiry into whether the device's use violated Dawkins's Fourth Amendment rights.

**52**

*United States v. Henson,* 848 F.2d 1374, 1383 (6th Cir.1988). Rather, an otherwise valid search is transformed into an impermissible general search only where the searching officers demonstrate a "flagrant disregard for the limitations of a search warrant." *United States v. Lambert,* 771 F.2d 83, 93 (6th Cir.1985). In such circumstances, all evidence seized during the search—whether permitted under the warrant or not—will be suppressed. *Id.*

■ In support of his allegation that the officers conducted an impermissible general search, Mr. Dawkins contends that the way in which the search was conducted—with the officers removing vent covers, opening cereal boxes, removing and inspecting his doorbell and smoke detectors, and the like—was unreasonable because the warrant granted the officers permission to search only for firearms and ammunition. The implied thrust of Dawkins's argument is that the officers were searching for drugs. While this might be so, the areas searched could very well have contained small arms or ammunition, making the officers' broad search permissible under the terms of the warrant. While the officers seized items, including scales, beepers, and documents that were beyond the scope of the warrant (and were therefore excluded by the court below), the search was not so broad as to be in flagrant disregard to the limitations of the warrant. *See, e.g., United States v. Medlin,* 842 F.2d 1194, 1199 (10th Cir.1988) (finding that the improper seizure of 667 pieces of property grossly exceeded the scope of the warrant and required suppression of all evidence under the warrant).

## CONCLUSION

In conclusion, we find no error in the district court's disposition of Mr. Dawkins's motion to suppress. Accordingly, the opinion of the district court is AFFIRMED.