OPINION
{¶ 1} In September 2002, defendant-appellant, Michael T. McIntosh, was indicted by the Franklin County Grand Jury on one count of trafficking in cocaine, in violation of R.C. 2925.03, and one count of possession of cocaine, in violation of R.C. 2925.11. Both counts carried the specification that appellant was a major drug offender and that the amount of cocaine involved was an amount equal to or exceeding 1000 grams. Following a jury trial, appellant was found guilty of both counts and was sentenced to serve ten years on each count, and the counts were to be served concurrently. Appellant was also fined in the amount of $20,000.
 {¶ 2} Following his conviction, appellant timely filed a notice of appeal in this court, wherein he asserts the following four assignments of error:
I. The trial court erred when it denied appellant's motion to suppress evidence in violation of his rights under the Ohio and United States Constitutions.
II. Appellant is denied his right to a fair trial under the Ohio and Federal Constitutions when juror misconduct occurs during the deliberation part of his trial.
III. The appellant was denied effective assistance of counsel thereby depriving him his right to a fair trial under the State and Federal Constitutions.
IV. The trial court erred by informing the jury that a defense witness had asserted his Fifth Amendment right against self-incrimination and chose not to testify thereby depriving appellant his right to a fair trial under the Ohio and Federal Constitutions.
 {¶ 3} In June 2002, Columbus police undercover narcotics officers arrested Allen Grubb on charges of possession of marijuana. (Tr. 121.) In return for reduced charges, Grubb agreed to assist police and prosecutors by providing information about other people who sold cocaine. (Tr. 122.) On June 18, 2002, Grubb met with Columbus narcotic detectives after having arranged for a buy of cocaine from appellant, whom he knew as "Big Mac." (Tr. 123-126.) According to Grubb, appellant informed him that he had been resupplied and would have cocaine ready for him the next day. (Tr. 124.) Grubb informed the detective with whom he was working, and a search warrant was obtained for the location where Grubb said he would make the purchase. (Tr. 57.) Detectives searched both Grubb and his vehicle to make sure there were no drugs in his possession before the arranged deal. (Tr. 58-60.) Detectives established surveillance on both Grubb and the body shop where the cocaine was to be purchased. (Tr. 60.)
 {¶ 4} Grubb drove to appellant's body shop located on Glenwood Avenue and went inside to make the purchase. (Tr. 125.) Once inside, Grubb gave appellant $900 in cash, which had been provided to Grubb by the detectives. The money Grubb paid appellant was from a front for an earlier drug deal between the two men. (Tr. 126.) In exchange, appellant gave Grubb a box containing a kilo of cocaine. (Tr. 126-130.) Grubb took the box with him and exited the body shop at approximately 12:50 p.m. (Tr. 60.) The entire transaction took approximately ten to 15 minutes.
 {¶ 5} Detectives followed Grubb to a pre-arranged location and did not lose sight of him during this time. Detectives again searched Grubb, field-tested the kilo, determined it was cocaine, and other officers executed the search warrant at the body shop on Glenwood. (Tr. 61.)
 {¶ 6} During the search, detectives recovered $900 from appellant, baggies containing cocaine residue, drug paraphernalia, and all objects with cocaine residue. (Tr. 61-62.) Latent prints taken from the baggies with cocaine residue found inside the body shop were compared to known prints of appellant. Columbus police fingerprint experts testified that four of the prints belonged to appellant. (Tr. 374-376.)
 {¶ 7} In his first assignment of error, appellant argues that the trial court erred in denying his motion to suppress evidence obtained pursuant to the search warrant which appellant argues did not set forth probable cause. Furthermore, appellant argued at trial and asserts in this assignment of error that he had established that the police did not comply with the "knock and announce" rule and that this provided another reason why the trial court should have granted his motion to suppress the items obtained at the body shop. For the reasons that follow, this court disagrees.
 {¶ 8} With regard to the issuance of the search warrant itself, two issues are raised: (1) does the affidavit submitted in support of the search warrant contain sufficient probable cause to support the decision of the judge to issue the warrant under the "totality-of-the-circumstances" test of Illinois v. Gates (1983),462 U.S. 213, 103 S.Ct. 2317, and (2) if not, should the evidence obtained by law enforcement officers as the result of their execution of this search warrant be admissible in any event, under the "good faith exception" to the exclusionary rule set forth in United States v. Leon
(1984), 468 U.S. 897, 104 S.Ct. 3405. Thereafter, the final question raised by appellant's first assignment of error is whether or not the trial court erred in denying appellant's motion to suppress based upon appellant's contention that the police officers did not comply with the "knock and announce" rule as guaranteed by the Fourth Amendment. Wilsonv. Arkansas (1995), 514 U.S. 927, 115 S.Ct. 1914.
 {¶ 9} In State v. George (1989), 45 Ohio St.3d 325, the Supreme Court of Ohio stated in the first paragraph of the syllabus, as follows:
In determining the sufficiency of probable cause in an affidavit submitted in support of a search warrant, "[t]he task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the `veracity' and `basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." (Illinois v.Gates [1983], 462 U.S. 213, 238-239, followed.)
 {¶ 10} The court then went on to set forth the standard of review to be followed by an appellate court as follows:
In reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant issued by a magistrate, neither a trial court nor an appellate court should substitute its judgment for that of the magistrate by conducting a de novo determination as to whether the affidavit contains sufficient probable cause upon which that court would issue the search warrant. Rather, the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, trial and appellate courts should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant. (Illinois v.Gates, supra, followed.)
Id., paragraph two of the syllabus.
 {¶ 11} In the present case, Columbus Police Officer Dawn M. Sandford submitted the following affidavit in support of the search warrant:
Detective Dawn M. Sandford #1588 * * * who being duly sworn according to law, deposes and says that he/she has good cause to believe and does believe that Cocaine is being kept in a certain location known as:
256 GLENWOOD AVENUE
* * *
in violation of Section 2925.11 O.R.C. — Possession; and authority to search any person or persons at such premises, identities known or otherwise.
The facts upon which such belief is based are as follows:
A confidential informant (C/I) stated during a debriefing that he/she has purchased a kilo of powdered cocaine on numerous occasions within the last six (6) months from Michael McIntosh AKA "Big Mac". The C/I stated that these deals occurred at body shops/garages located at 238 South Glenwood Avenue and 256 South Glenwood Avenue.
Within the last 12 hours the C/I has been contacted by Michael McIntosh who informed him/her that he had been recently re-supplied and to come over to the body shops/garages on South Glenwood Avenue.
Michael McIntosh is identified as Michael Thomas McIntosh * * *. Michael McIntosh has an arrest record of Improper Handling of a Firearm in a motor vehicle/Using weapon while intoxicated/Discharging weapons/ and Aggravated Menacing. Michael McIntosh currently has an outstanding warrant out of Lawrence County for Trafficking in Cocaine, Case #02CR55.
Intelligence reports within the Columbus Division of Police reveal information pertaining to Michael McIntosh AKA "Ratchet" AKA "Big Mac" being a major distributor of cocaine on the west side of Columbus. The intelligence report also states that "Big Mac" or "Ratchet" owns a body shop on the west side of Columbus which he distributes drugs out of.
The C/I knows what cocaine looks like, how it is packaged and has used it in the past.
The execution of this search warrant will be contingent upon a purchase of cocaine from this location.
 {¶ 12} Appellant contends that the affidavit in support of the search warrant does not satisfy the probable cause requirement. Specifically, appellant contends that there are no facts connecting the body shop with the sale of any illegal substances; there is no statement supporting the credibility of the confidential informant; and the intelligence reports from the police department are merely conclusory.
 {¶ 13} Upon review of the search warrant affidavit, we note that the following relevant facts are contained within the affidavit: the police were working with a confidential informant; the confidential informant had bought cocaine from appellant on numerous occasions in the last six months; the drug buys occurred at the body shop identified in the affidavit; appellant had contacted the confidential informant within the past 12 hours to inform him that the appellant had been recently resupplied with cocaine; the confidential informant was invited to come to the body shop to obtain cocaine; the appellant has an arrest record, including an outstanding warrant for trafficking in cocaine; police intelligence reports indicate that appellant is a major distributor of cocaine on the west side of Columbus; there is information that appellant owns a body shop on the west side of Columbus; the confidential informant knows what cocaine looks like; and the execution of the search warrant was to be contingent upon the purchase of cocaine from the location listed in the warrant.
 {¶ 14} Appellant notes that nothing in the affidavit for the search warrant vouches for the veracity of the confidential informant. InIllinois v. Gates, supra, the court acknowledged that the informant's veracity, reliability, and bases of knowledge are all highly relevant in determining the value of the informant's information. However, instead of finding that these elements should be considered entirely separate and an independent requirement, the court found that they should be understood as "closely intertwined issues that may usefully illuminate the commonsense, practical question whether there is `probable cause' to believe that contraband or evidence is located in a particular place." Id. at 230. As such, in applying the totality-of-the-circumstances test, the court noted that "a deficiency in one [area] may be compensated for, in determining overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." Id. at 233.
 {¶ 15} In the present case, it is true that the search warrant does not identify the confidential informant's criminal "posture"; however, it is apparent that the confidential informant is a person whom the police know has purchased cocaine on numerous occasions within the last six months. As such, the judge who issued the warrant could certainly infer that the confidential informant either had a criminal record or had recently been arrested by the police for a drug-related offense. As such, the judge could take that fact into consideration in determining whether or not the affidavit contained sufficient evidence to establish probable cause. Furthermore, while appellant contends that the police were required to provide more information than simply the fact that appellant was known to be a major drug dealer based upon intelligence reports, appellant does not cite any cases which require that kind of detail. Again, it is but one factor to consider, which can be balanced against other facts present in the affidavit. For instance, the affidavit contains information indicating that appellant is known to the police, and he currently has an outstanding warrant for trafficking in cocaine. The affidavit also contains information that appellant owns the body shop where the search warrant is to be executed. These two facts indicate that the subject of the search is a person known to the police, with an outstanding warrant, and the police have identified a physical structure which the appellant owns from which police believe he has distributed drugs.
 {¶ 16} Furthermore, this court notes that the execution of the search warrant was specifically contingent upon the purchase of cocaine by the confidential informant from this particular location. Anticipatory search warrants have been routinely upheld in many jurisdictions since the 1970's. The rationale for permitting anticipatory search warrants is that it is reasonable for a magistrate or a judge to believe that certain controllable events will occur in the near future. In State v. Nathan
(Nov. 16, 2001), Montgomery App. No. C.A. 18911, the Second District Court of Appeals discussed anticipatory warrants and stated, as follows:
The rationale for allowing anticipatory search warrants, which is founded on the judicial preference for searches conducted pursuant to a warrant, is that it may be reasonable for a magistrate to conclude that specific, objectively evident events that are almost certain to occur in the near future will be sufficient to create probable cause, and therefore demonstrate probable cause to believe that the evidence to be seized will be located at the specific place to be searched when the authorized search occurs. [State v.] Folk [(1991), 74 Ohio App.3d 468].
 {¶ 17} Bearing in mind that, as a reviewing court, we are to accord great deference to the trial judge's determination of probable cause and are to resolve doubtful or marginal cases in favor of upholding the warrant, we find that probable cause was demonstrated in this case. There were sufficient facts contained within the affidavit for the trial judge to make a practical, common sense decision, whether, given all the circumstances, including the veracity of the person supplying hearsay information, there was a fair probability that contraband or evidence of a crime would be found in this particular case. Furthermore, the execution of this search warrant was specifically contingent upon the confidential informant actually purchasing cocaine at the body shop. The police officers tested the substance bought by the confidential informant and it was indeed cocaine. As such, the police knew, at that time, that they would find evidence of drugs at the body shop. The anticipatory nature of this particular search insured that the information provided by the confidential informant was indeed accurate and that appellant was dealing drugs from this particular establishment. As such, this court finds it is not necessary to examine whether or not the good-faith exception would apply in this particular case having found that the affidavit was sufficient to establish probable cause. As such, the first portion of appellant's first assignment of error is not well-taken.
 {¶ 18} In the second portion of his first assignment of error, appellant contends that the trial court erred in concluding that the police officers had not violated the "knock and announce" rule prior to executing the search warrant and entering his body shop. In Wilson v.Arkansas, supra, the United States Supreme Court held that the common law "knock and announce" principle forms a part of the Fourth Amendment guaranteeing protection from unreasonable search and seizure. The violation of the "knock and announce" rule is not merely a statutory violation; it is a violation of the reasonableness requirement of the Fourth Amendment.
 {¶ 19} The "knock and announce" rule is codified in R.C. 2935.12(A) and provides as follows:
When making an arrest or executing an arrest warrant or summons in lieu of an arrest warrant, or when executing a search warrant, the peace officer, law enforcement officer or other authorized individual making the arrest or executing the warrant or summons may break down an outer or inner door or window of a dwelling house or other building, if, after notice of his intention to make the arrest or to execute the warrant or summons, he is refused admittance, but the law enforcement officer or other authorized individual executing a search warrant shall not enter a house or building not described in the warrant.
The "knock and announce" rule makes no distinction between a home or a business.
 {¶ 20} Appellant raised the issue of the police officers' alleged violation of the "knock and announce rule" at a hearing held immediately prior to the selection of a jury. Appellant called Kenneth Sexton, a friend of appellant, who testified that he was outside the body shop when the search warrant was executed. Sexton testified that he was outside the front of the building when the police arrived, that two police officers secured the front corners of the building while two others exited a van, grabbed the door knob and went inside the body shop. (Tr. 28-29.) Sexton specifically testified that the police did not announce that they were police officers prior to the time that they entered the body shop.
 {¶ 21} On cross-examination, Sexton was asked if he knew how many doors there were through which entry could be gained to the body shop. Sexton indicated that there were four doors and admitted that, while he could see the front door, he was not in a position to see the back door. (Tr. 31-32.)
 {¶ 22} The trial court concluded that appellant had not presented sufficient evidence for the court to determine that there was a constitutional violation with regard to the "knock and announce" rule. Because Sexton was not able to testify that the officers did not knock and announce at the back door, the trial court concluded that appellant had not demonstrated a constitutional violation. (Tr. 36.)
 {¶ 23} This court notes that the prosecuting attorney offered to have one or more policemen testify at the hearing regarding the procedure followed by the police that day. However, because the trial court found that appellant had not presented sufficient evidence to even raise the issue of a constitutional violation, the trial court determined that the police officers' testimony was not necessary. This court agrees. Furthermore, appellant argues that the state never offered testimony reflecting compliance with the constitutional mandates. However, upon review of the transcript, this court finds otherwise. Specifically, this court notes that Officer Brian Planck testified that the officers did knock on the door and announce that they were police officers and that they had a search warrant. (Tr. 240.) Because this court agrees with the trial court's determination that appellant did not present sufficient evidence to show a violation of his constitutional rights, and further, because the police officers testified that the "knock and announce" rule was followed, this court finds that this portion of appellant's first assignment of error is likewise not well-taken.
 {¶ 24} Appellant's first assignment of error is therefore overruled.
 {¶ 25} In his second assignment of error, appellant contends that he was denied his right to a fair trial because juror misconduct occurred during the deliberation phase of his trial. It is undisputed that certain improprieties occurred during the deliberation phase of the trial. Specifically, one of the jurors created, on a personal computer, ballots regarding the counts charged, as well as instructions for voting by secret ballot. The documents created as a ballot are represented as follows:
 Count #1
Circle one:
 Partial
or All Count #2
Circle one:
 Partial
or All {¶ 26} Regarding the instructions, the following relevant information was provided:
Secret ballot vote — GUILTY/NOT GUILTY
This vote is to determine where everyone stands on only the guilt or innocence of each count. The quantity is not to be factored into this vote. Once we are all in agreement of guilt or innocence we will make further determinations as necessary.
* * *
After the vote
If not unanimous, list and discuss issues of concern. Use the board to illustrate points of discussion. Allow all to speak freely without interruption. Vote again and repeat discussion as necessary.
If by unanimous vote of Guilty, move on to determining quantities.
Secret ballot vote — QUANTITY
This vote is to determine where we stand on the quantity in general not the actual quantities. Vote on PARTIAL or ALL.
 {¶ 27} In State v. Sheppard (1998), 84 Ohio St.3d 230, the Supreme Court of Ohio stated as follows:
* * * "Due process means a jury capable and willing to decide the case solely on the evidence before it[.]" Smith v. Phillips (1982),455 U.S. 209, 217 * * *. "In a criminal case, any private communication, contact, or tampering * * * with a juror during a trial about the matter pending before the jury is * * * deemed presumptively prejudicial[.]."Remmer v. United States (1954), 347 U.S. 227, 229 * * *. But "[t]he presumption is not conclusive." Id. In fact, Smith v. Phillips modified the concept of presumed prejudice and required the party complaining about juror misconduct to prove prejudice. 455 U.S. at 215-217 * * *.
Additionally, Ohio courts have a long-standing rule "not [to] reverse a judgment because of the misconduct of a juror unless prejudice to the complaining party is shown." State v. Hipkins (1982), 69 Ohio St. 2d 80,83 * * *. Accord State v. Keith (1997), 79 Ohio St.3d 514, 526 * * *. The defense must establish that an outside communication "biased the juror."Id., citing State v. Phillips (1995), 74 Ohio St.3d 72, 88-89 * * *. Under Crim.R. 33(A)(2), juror misconduct must materially affect an accused's substantial rights to justify a new trial. See, also, R.C.2945.79(B).
 {¶ 28} It is clear that what the juror did in creating these forms at home was improper; however, this court finds it difficult to automatically characterize this particular action as "juror misconduct," inasmuch as the ballots could have properly been created in the deliberation room on a separate piece of paper. Furthermore, the typed instructions could easily have been orally communicated among the jurors and are not, in themselves, improper. However, even if this court were to formally characterize this as "juror misconduct," this court agrees with the trial court's conclusion that appellant was required to demonstrate prejudice and that he failed to do so. Neither the ballots nor the instructions contained any outside information, nor did they provide any additional law or instructions which were not already provided the jurors by the trial court. The trial court found that there was nothing in the materials dealing with evidence with respect to guilt or innocence and that it was more of an aid to assist them. The foreman for the jury was called and the trial court inquired as to the use of the forms. The foreman informed the court that the ballots and instructions had been treated as tools during the course of deliberations. (Tr. 617.) Inasmuch as it would have been appropriate for the jurors to have voted by utilizing extra pieces of paper, or without such, the trial court concluded that appellant had not demonstrated prejudice and that a mistrial was not required. As stated previously, for the same reasons this court agrees. Appellant's second assignment of error is overruled.
 {¶ 29} In his third assignment of error, appellant argues that he was denied effective assistance of counsel. Strickland v. Washington (1984),466 U.S. 668, 104 S. Ct. 2052. The United States Supreme Court established a two-prong analysis for determining whether counsel's assistance was so defective as to require reversal of conviction:
* * * First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
Id. at 687.
 {¶ 30} The benchmark for judging any claim of ineffectiveness is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. The proper standard of attorney performance is that of reasonably effective assistance. When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense. The defendant carries the burden of showing that counsel's deficient performance prejudiced his trial. Id. at 687-691. The burden is met whether a reviewing court finds, given the totality of the evidence that, but for counsel's errors, the jury's verdict would reasonably have been different. Id. at 691-696.
 {¶ 31} Counsel for appellant called a current client of his, an acquaintance of the appellant named Terry Nelson. The substance of Nelson's testimony involved a conversation that Nelson had with a man named Chris Elswick, who indicated to Nelson that he was the person who actually sold the cocaine to the confidential informant, and that he was glad that appellant had been arrested for those charges instead of himself. (Tr. 525, 528.) Upon cross-examination, the prosecuting attorney began asking Nelson questions concerning some charges which were currently pending against him. Specifically, those charges involved possession of cocaine. At that time, the trial court had conversations off the record with counsel and ultimately a member of the public defender's office came to advise Nelson of his rights. As a result of discussions with the public defender, Nelson decided to invoke his Fifth Amendment right against self-incrimination. Out of the hearing of the jury, defense counsel had indicated that it had been his hope that cross-examination could have been limited solely to Nelson's knowledge of the facts involving appellant without venturing into his current charges. However, as the prosecuting attorney noted, with few exceptions, cross-examination is relatively unlimited. Thereafter, the trial court informed the jury that upon advice of counsel, Nelson had invoked his Fifth Amendment right against self-incrimination, that he would not be testifying further, and that the jury was instructed to disregard his testimony as such was to be stricken from the record.
 {¶ 32} In his third assignment of error, appellant contends that defense counsel had no legitimate reason to call Nelson as a witness and that he should have realized that, at some point in time, Nelson would assert his Fifth Amendment rights and damage appellant's case.
 {¶ 33} First, upon reviewing the transcript, it becomes apparent that defense counsel did have a reason for calling Nelson as a witness. According to his testimony, Elswick had informed Nelson that he was the one who sold the cocaine to the confidential informant and that he was happy that appellant was the one who had been arrested for it. As such, the record bears out that counsel had a legitimate reason for calling Nelson as a witness. However, appellant is correct that, especially since defense counsel is also counsel for Nelson, counsel should have realized that, at some point in time, Nelson would invoke his Fifth Amendment right not to testify further.
 {¶ 34} Given that defense counsel articulated a reason for having called Nelson to the stand, this court finds that it was trial strategy to do so. Nelson's testimony, if believed, would have pointed the guilty finger away from appellant and towards another person. The fact that counsel incorrectly hoped that the scope of cross-examination would be limited was unfortunate, but this court cannot say that, but for his testimony and assertion of the Fifth Amendment right against self-incrimination, the outcome of this trial reasonably would have been different. Because we cannot make that finding, appellant has not demonstrated that trial counsel was ineffective, and his third assignment of error is overruled.
 {¶ 35} In his fourth and final assignment of error, appellant contends that the trial court erred by informing the jury that Nelson had asserted this Fifth Amendment right against self-incrimination. Appellant contends that the trial court should have simply stricken Nelson's testimony without telling the jury about the Fifth Amendment issue. Appellant contends that Nelson's refusal to testify actually cast dispersions upon him by showing the jury that incriminating evidence of cocaine distribution existed at appellant's garage.
 {¶ 36} Because trial counsel failed to object to the instruction appellant now asserts was given in error by the trial court, this court reviews this error under the plain error analysis. Pursuant to Crim. R. 52(B), this court may notice plain error or defects affecting substantial rights even though they were not brought to the attention of the court. In order to succeed, appellant must first show that there was an error, a deviation from a legal rule. State v. Hill (2001), 92 Ohio St.3d 191. Second, the error must be "plain" within the meaning of Crim. R. 52(B). This means that the error must be an obvious defect in the trial proceedings. State v. Sanders (2001), 92 Ohio St.3d 245. Third, this court must find that the error affected substantial rights. In State v. Barnes
(2002), 94 Ohio St.3d 21, the Supreme Court of Ohio interpreted this to mean that the trial court's error must have affected the outcome of the trial. Finding that any error did not affect the outcome of his trial, appellant's fourth assignment of error is overruled.
 {¶ 37} Based on the foregoing, appellant's four assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.
Judgment affirmed.
Brown, P.J., and Lazarus, J., concur.