OWENS, Circuit Judge,
joined by SILVERMAN and CALLAHAN, Circuit Judges,
concurring in the judgment:
The majority correctly affirms the district court’s denial of Dreyer’s motion to suppress, and recognizes that “[cjourts do not invoke the exclusionary rule absent compelling circumstances.” Majority at 1278 (citing Hudson v. Michigan, 547 U.S. 586, 591, 126 S.Ct. 2159, 165 L.Ed.2d 56 (2006), and Sanchez-Llamas v. Oregon, 548 U.S. 331, 347-48, 126 S.Ct. 2669, 165 L.Ed.2d 557 (2006)). But it says that future violations of the Posse Comitatus Act (PCA) could lead to suppression. Majority at 1279-80 (citing United States v. Roberts, 779 F.2d 565 (9th Cir.1986)). I write separately because I believe that absent express congressional authorization, suppression is not a remedy for PCA violations.
Since we decided Roberts nearly 30 years ago, the landscape on suppression has changed. The Supreme Court has “long since rejected” the broader application of suppression that its earlier decisions suggested, see Hudson, 547 U.S. at *1284 591, 126 S.Ct. 2159, and “imposed a more rigorous weighing of its costs and deterrence benefits.” Davis v. United States, 564 U.S. 229, 131 S.Ct. 2419, 2427, 180 L.Ed.2d 285 (2011). Hudson and Sanchez-Llamas instruct that before we determine whether police conduct warrants exclusion under the facts of a particular case, we should first decide if the violation can ever result in suppression. Hudson, 547 U.S. at 599, 126 S.Ct. 2159 (no suppression for violation of the Fourth Amendment knock-and-announce rule); Sanchez-Llamas, 548 U.S. at 350, 126 S.Ct. 2669 (no suppression for violation of the right to consular notification of the Vienna Convention on Consular Relations).
' Exclusion of evidence to remedy a statutory violation is extremely rare. The exclusionary rule applies “primarily to deter constitutional violations.” Sanchez-Llamas, 548 U.S. at 348, 126 S.Ct. 2669. In “[t]he few cases in which [the Court has] suppressed evidence for statutory violations ..., the excluded evidence arose directly out of statutory violations that implicated important Fourth and' Fifth Amendment interests.” Id. Those cases are easily distinguishable from the PCA.
In McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943), and Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957), the Court suppressed evidence obtained following violations of rules requiring prompt presentment of an arrestee before a magistrate judge. The “supervisory rules [at issue in McNabb and Mallory are] responsive to the same considerations of Fifth Amendment policy” underlying the Miranda doctrine. Miranda v. Arizona, 384 U.S. 436, 463, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
And in Miller v. United States, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958), the Court suppressed evidence obtained after police violated the knock-and-announce rule of 18 U.S.C. § 3109. In Wilson v. Arkansas, 514 U.S. 927, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995), the Court held that the “knock and announce principle” enforced in Miller is also “part of the Fourth Amendment reasonableness inquiry.” Id. at 930, 115 S.Ct. 1914.
What constitutional right does the PCA implicate? The majority finds the PCA’s “constitutional underpinnings” in the remarks of one senator[1] and the Supreme Court’s dicta discussing a “traditional and strong resistance of Americans to any military intrusion into civilian affairs ... expressed], for example, in the Third Amendment’s explicit prohibition against quartering soldiers.” Laird v. Tatum, 408 U.S. 1, 15, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972). See Majority at 1279 & n. 7. A statement of a senator and dicta from Laird are not enough to convert the PCA into the Third Amendment 2.0. The actions of various U.S. Presidents — who at times called on the military to enforce civil laws in the first half of the nineteenth century — strongly suggest that the PCA is not constitutional. See H.W.C. Furman, Restrictions upon Use of the Army Imposed by the Posse Comitatus Act, 7 Mil. L.Rev. 85, 89 (1960), and sources cited therein.[2]
*1285 And even if we draw the lens back far enough to find an abstract constitutional principle against military incursion into civilian affairs, that principle cannot “fairly be characterized as expressly designed to protect the personal rights of [criminal] defendants.” United States v. Dreyer, 767 F.3d 826, 841 n. 3 (9th Cir.2014) (O’Scannlain, J., dissenting) (quoting Walden, 490 F.2d at 377). Any right is “at best remotely connected to the gathering of evidence.” Sanchez-Llamas, 548 U.S. at 349, 126 S.Ct. 2669. An individual defendant like Dreyer has no interest in what uniform the official who monitors his public exchange of child pornography is wearing.
Rather than reach the issues discussed in Parts I — III, I would follow Hudson and Sanchez-Llamas to hold that PCA violations can never warrant suppression. The PCA’s abstract constitutional foundation does not bear the extreme weight that the suppression remedy requires — far more is needed before we elevate the PCA to the same status as the Fourth and Fifth Amendments.
Congress has had ample time to authorize suppression for PCA violations, but it never has. It knows how. See, e.g., 18 U.S.C. § 2518(10)(a).(Title III); 50 U.S.C. §§ 1806, 1825 & 1845 (Foreign Intelligence Surveillance Act). Instead, it chose to enforce the PCA with criminal sanctions. 18 U.S.C. § 1385. Under the Supreme Court’s current approach, we lack the power to draft a suppression remedy that we think Congress forgot. We must let Congress authorize the “last resort” of suppression for PCA violations, big or small.
Because I agree with the majority’s conclusion that Dreyer’s suppression motion must be denied, I respectfully concur in the judgment.

. Indeed, the statements of other senators suggest that the PCA had far more to do with political power than individual privacy. See, *1285 e.g., 7 Cong. Rec. 3586 (remarks of Rep. Kim-mel) (“[T]he man who holds the Presidency of the United States against the will of the people, clearly expressed according to law, is as surely a monarch as he who by birth or force holds a throne... The silent soldier who commanded the standing Army riveted the chains which the people drag along in lengthening disgrace."); id. at 4240 (remarks of Sen. Kernan) (expressing fear that military posse comitatus "might be used for an entire overthrow of the rights of citizens at the polls”); id. at 4245 (remarks of Sen. Merri-mon) (alleging that the Army "has been used and prostituted to control elections repeatedly” and explaining that the "object of [the PCA] is to prevent a like prostitution of the Army in the future”).