In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-05-206 CR


____________________



CORNELIUS BOULARD, JR., Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 252nd District Court


Jefferson County, Texas


Trial Cause No. 92162






MEMORANDUM OPINION


 A jury convicted appellant Cornelius Boulard of possession of a controlled substance. 
See Tex. Health & Safety Code Ann. § 481.115(c) (Vernon 2003). The trial court
sentenced him as an habitual felony offender to twenty-five years of imprisonment in the
Texas Department of Criminal Justice -- Correctional Institutions Division. In this appeal,
Boulard argues the evidence was legally and factually insufficient to sustain his conviction
and the trial court erred in admitting evidence allegedly obtained in violation of the Fourth
and Fourteenth Amendments. See U. S. Const. amends. IV, XIV. We affirm.

Facts


 Officer Eric Kvarme, a police officer with the Beaumont Police Department Narcotics
Unit, testified that he has known Boulard for nine to ten years. Officer Kvarme was part of
the entry team that executed a search warrant at a residence owned by Boulard's
grandmother. Officer Kvarme's role was to enter, secure the residence, and assist with
processing the scene and collecting evidence. The search warrant was based upon
information received from an informant the officers believed to be reliable. 

 Officer Kvarme was the first officer to enter the residence. Upon entering the house
through the back door, Officer Kvarme found four individuals: Boulard's elderly
grandmother, Boulard's uncle, Boulard, and another female. Officer Kvarme testified that
Boulard's grandmother was in poor health, and the residence was equipped with a wheelchair
ramp. According to Officer Kvarme, Boulard's uncle is "a little slow," and "[h]e takes a lot
of medication . . . ." Boulard and the female were found on the couch in the living room. 
The officers did not find any weapons. The officers were searching for another male who
was named in the search warrant along with Boulard, but that individual was not inside. 

 After searching for approximately fifteen minutes, Officer Kvarme found cocaine on
the top of a high cabinet in the bathroom, as well as under the bottom drawer of the cabinet.
Officer Kvarme also found size extra large men's clothing on the bathroom floor. After
finding the drugs, the officers videotaped the bathroom and collected the drugs as evidence.
Officer Kvarme turned the drugs over to the case agent, Scott Apple. Officer Kvarme then
spoke to Boulard, who said the drugs were not his. According to Officer Kvarme, Boulard
also offered information about a drug dealer "to help himself out." 

 Sergeant Curtis Breaux, a supervisor with the narcotics division of the Beaumont
Police Department, testified that on December 5, 2003, he assisted with executing a search
warrant at a residence in south Beaumont. The purpose of the warrant was to search for
crack cocaine. One of Sergeant Breaux's duties was to videotape any persons and evidence
found at the scene. Sergeant Breaux videotaped the anterior of the house and the location
of the individuals inside, and he then stopped to assist with the search before videotaping the
location where the cocaine was found. 

 Sergeant Breaux testified that the officers found four people when they entered the
house. Officer Breaux was not part of the entry team, so he was not the first officer to go
into the residence. Sergeant Breaux testified that when he entered the residence, Boulard and
a young female were on the couch. Sergeant Breaux testified that after searching for
approximately fifteen minutes, the officers recovered crack cocaine from the top and bottom
of the bathroom cabinet. The officers did not find drug paraphernalia, cooking supplies, or
money, and Boulard was not found near the bathroom. 

 Scott Apple of the Beaumont Police Department Narcotics Division testified he served
as the case agent in Boulard's case. After the officers completed their search, he took
possession of the evidence, which included the drugs and a piece of mail sent to Boulard at
that address. Officer Apple field tested the drugs and submitted them to the crime lab.
Charlyn Voight, a forensic analyst with the Jefferson County Regional Crime Lab, testified
that she tested the drugs recovered from the residence and determined them to be cocaine. 

Boulard's First Issue


 In his first issue, Boulard contends the evidence is legally and factually insufficient
to support his conviction. A legal sufficiency review requires the appellate court to view the
evidence in the light most favorable to the verdict to determine whether a rational fact finder
could have found each element of the offense beyond a reasonable doubt. Ross v. State, 133
S.W.3d 618, 620 (Tex. Crim. App. 2004) (citing Jackson v. Virginia, 443 U.S. 307, 319, 99
S.Ct. 2781, 61 L.Ed.2d 560 (1979)). In Zuniga v. State, 144 S.W.3d 477, 484-85 (Tex. Crim.
App. 2004), the Court of Criminal Appeals phrased the standard for a factual sufficiency
review as follows: 

 Considering all of the evidence in a neutral light, was a jury rationally justified
in finding guilt beyond a reasonable doubt? However, there are two ways in
which the evidence may be insufficient. First, when considered by itself,
evidence supporting the verdict may be too weak to support the finding of guilt
beyond a reasonable doubt. Second, there may be both evidence supporting
the verdict and evidence contrary to the verdict. Weighing all the evidence
under this balancing scale, the contrary evidence may be strong enough that
the beyond-a-reasonable-doubt standard could not have been met, so the guilty
verdict should not stand. 


An appellate court "must give due deference to the fact finder's determinations concerning
the weight and credibility of the evidence and will reverse the fact finder's determination
only to arrest the occurrence of a manifest injustice." Swearingen v. State, 101 S.W.3d 89,
97 (Tex. Crim. App. 2003). It is the sole province of the jury to determine the credibility of
witnesses and to weigh contradictory testimony. Cain v. State, 958 S.W.2d 404, 408-09
(Tex. Crim. App. 1997).

 "To prove unlawful possession of a controlled substance, the State must first prove
appellant exercised actual care, control and management over the contraband and second,
that appellant had knowledge the substance in his possession was contraband." Nixon v.
State, 928 S.W.2d 212, 215 (Tex. App.--Beaumont 1996, no pet.) (citing King v. State, 895
S.W.2d 701, 703 (Tex. Crim. App. 1995)). The State need not prove exclusive possession
of the contraband, since control over contraband may be jointly exercised by more than one
person. McGoldrick v. State, 682 S.W.2d 573, 578 (Tex. Crim. App. 1985); State v. Derrow,
981 S.W.2d 776, 779 (Tex. App.--Houston [1st Dist.] 1998, pet. ref'd). However, "mere
presence at a place where contraband is being used or possessed by others does not justify 
finding that a person is in joint possession or is a party to an offense." Roberson v. State, 80
S.W.3d 730, 735 (Tex. App.--Houston [1st Dist.] 2002, pet. ref'd).

 When an accused is not in exclusive possession of the location where contraband is
found, additional independent facts and circumstances may affirmatively link him to the
contraband. Nixon, 928 S.W.2d at 215. An affirmative link may be established through
either direct or circumstantial evidence, and it must show that the accused's connection to
the contraband was more than fortuitous. Poindexter v. State, 153 S.W.3d 402, 405-06 (Tex.
Crim. App. 2005). Factors which tend to establish affirmative links include: 

 (1) the contraband was in plain view;

 (2) the accused was the owner of the premises in which the contraband was found;

 (3) the contraband was conveniently accessible to the accused;

 (4) the contraband was found in close proximity to the accused;

 (5) a strong residual odor of the contraband was present;

 (6) paraphernalia to use the contraband was in view or found near the accused;

 (7) the physical condition of the accused indicated recent consumption of the
contraband in question;

 (8) conduct by the accused indicated a consciousness of guilt;

 (9) the accused had a special connection to the contraband;

 (10) the place where the contraband was found was enclosed;

 (11) the occupants of the premises gave conflicting statements about relevant
matters; and

 (12) affirmative statements connect the accused to the contraband.


Nixon, 928 S.W.2d at 215. 

 Boulard was inside the premises in which the contraband was found, and the
evidence showed Boulard received mail at that address. The other occupants of the
residence were physically or mentally challenged, so the high and low places where the
cocaine was found would likely be difficult for them to reach. Men's clothing was found
in the bathroom. Reviewing all the evidence in the light most favorable to the verdict, we
conclude a rational trier of fact could have found Boulard guilty of the offense charged
beyond a reasonable doubt. Considering all of the evidence in a neutral light, the jury was
rationally justified in finding proof of possession of a controlled substance beyond a
reasonable doubt. See Tex. Health & Safety Code Ann. § 481.115(c) (Vernon 2003). 
The evidence supporting the verdict is not too weak, nor is the contrary evidence so strong
that the burden of proof could not be met. The evidence is legally and factually sufficient
to support Boulard's conviction. Issue one is overruled.

Boulard's Second Issue


 In his second issue, Boulard contends the trial court erred by admitting evidence that
was unconstitutionally obtained. Specifically, Boulard asserts that the officers executing
the search warrant unjustifiably entered the residence without knocking and announcing
their presence. (1) See Wilson v. Arkansas, 514 U.S. 927, 115 S.Ct. 1914, 1917-18, 131
L.Ed.2d 976 (1995) (Generally, officers executing a search warrant must knock and
announce their presence before entering a residence.). Sergeant Breaux testified that when
executing a search warrant, standard procedure is to knock, announce, and wait a few
seconds to see if the occupants respond. The following exchange then occurred:



 [Prosecutor]: Is the element of surprise when you go into someone's
house important to you?


 [Sergeant Breaux]: That's the most important part. 


Boulard asserts that this exchange was the State's only evidence supporting the officers'
"no knock entry." However, Boulard overlooks the fact that Sergeant Breaux did not
testify that the officers entered without knocking in this case. Indeed, Sergeant Breaux
testified that he was not part of the team of officers who initially entered the residence. 
Furthermore, Officer Kvarme, who was the first officer to enter the house, simply testified
that the entry team entered the residence through the back door and secured the residence. 
Officer Kvarme never testified that he or any other investigating officer entered the
residence without first knocking and announcing their presence. 

 During the testimony of Charlyn Voight, Boulard's counsel objected to the entry of
the recovered cocaine into evidence. As part of his objection, counsel stated, "[w]e also
object on the reasonableness of knock and announce, that there was none of that." Boulard
does not point us to any evidence in this record indicating that the officers entered without
knocking and announcing their presence, and we find none. See Jeffery v. State, 169
S.W.3d 439, 443 n.1 (Tex. App.--Texarkana 2005, pet. ref'd) (State need only
demonstrate that exigent circumstances justified the entry when the defense has established
a prima facie case.) Therefore, the trial court did not err when it overruled defense
counsel's objection. Issue two is overruled, and the judgment of the trial court is affirmed.

 AFFIRMED.


 __________________________________

 CHARLES KREGER

 Justice


Submitted on February 9, 2006

Opinion Delivered April 19, 2006

Do not publish


Before McKeithen, C.J., Gaultney and Kreger, JJ.
1. Boulard filed a motion to suppress. However, his motion to suppress did not assert that
the officers entered the residence without knocking and announcing their presence.