COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | § | |
|---|---|---|
| GUILLERMO URQUIZA, | | No. 08-08-00016-CR |
| | § | |
| Appellant, | | Appeal from the |
| | § | |
| V. | | 199th Judicial District Court |
| | § | |
| THE STATE OF TEXAS, | | of Collin County, Texas |
| | § | |
| Appellee. | | (TC#199-81267-06) |
| | § | |
| | § | |

**O P I N I O N**

Guillermo Urquiza was convicted by a jury of aggravated assault on a public servant. The verdict included a deadly weapon finding, and the jury sentenced Appellant to 5 years' imprisonment. Appellant presents three issues for our review. In Issue One, Appellant contends the trial court committed reversible error by mis-defining the applicable mental states for aggravated assault. In Issue Two, Appellant challenges the legal and factual sufficiency of the evidence; specifically the jury's determination that he was aware Jesus Garcia was a public servant when he opened fire. In Issue Three, Appellant argues the trial court erred by denying his motion to suppress based on the S.W.A.T. teams' failure to "knock and annouce" themselves prior to entering his home.

In April 2006, Appellant was the subject of a McKinney, Texas Police Department investigation. McKinney detectives believed Appellant was selling illegal firearms out of his residence. A search warrant authorizing officers to search Appellant's residence for any

firearms, ammunition, and other related items, was obtained on April 12.

The warrant was executed by the McKinney Police Department S.W.A.T. team. Two teams of S.W.A.T. officers entered Appellant's house with the help of a door ram and two diversionary "flash-bang" devices. When Officer Jesus Garcia entered Appellant's bedroom, he and Appellant exchanged gunfire. Appellant was severely wounded in the fire-fight.

In Issue One, Appellant asserts the jury charge incorrectly defined the terms "intentional" and "knowingly," thereby permitting the jury to convict Appellant based on a variant of the charge as stated in the indictment. The standard of review for charge error is dependant on whether the defendant properly objected to the alleged error. *Mann v. State*, 964 S.W.2d 639, 641 (Tex.Crim.App. 1998). When, as is the case here, the defendant failed to object to the alleged error, reversal is not required unless the harm is so egregious that the defendant was denied a fair and impartial trial, or the defendant suffered egregious harm as a result. *Abdnor v. State*, 871 S.W.2d 726, 732 (Tex.Crim.App. 1994). "Egregious harm" is demonstrated, "whenever a reviewing court find that the case for conviction or punishment was actually made clearly and significantly more persuasive by the error." *Saunders v. State*, 817 S.W.2d 688, 692 (Tex.Crim.App. 1991). In any jury charge review, however, our first inquiry is to determine whether the charge was erroneous. *See Abdnor*, 871 S.W.2d at 731.

Appellant maintains that the definition of "knowingly" provided in the abstract portion of the charge permitted the jury to convict Appellant of a "nature of the result" type of aggravated assault, rather than a "nature of the conduct" type of assault, as was defined in the indictment. The Texas Penal Code provides three different ways to commit an "assault:"

(1)     intentionally, knowingly, or recklessly caus[ing] bodily injury to another

-2-

. . .

(2)      intentionally or knowingly threaten[ing] another with imminent bodily injury . . .; or

(3)      intentionally or knowingly caus[ing] physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative.

*See* TEX.PENAL CODE ANN. § 22.01(a)(Vernon Supp. 2009).

An "aggravated assault" is committed when the offender commits an assault by any of the means defined in Section 22.01, and during such commission the offender: (1) causes serious bodily injury to another; or (2) uses or exhibits a deadly weapon during the commission of the assault. *See* TEX.PENAL CODE ANN. § 22.02(a).

The indictment charged Appellant with an aggravated assault by threat.[1] This is a "nature of conduct" offense which has no required result. *See Hall v. State*, 145 S.W.3d 754, 758 (Tex.App.--Texarkana 2004, no pet.). The definition of the offense is satisfied if the accused intentionally or knowingly engaged in the prohibited conduct-- threatening with imminent bodily injury, aggravated by making the threat with a deadly weapon. *See Guzman v. State*, 988 S.W.2d 884, 887 (Tex.App.--Corpus Christi 1999, no pet.). Accordingly, the definitions in the charge concerning the applicable mental states should likewise be limited to the nature of the conduct. *Coleman v. State*, No. 08-05-00258-CR, 2007 WL 853116, at *4 (Tex.App.--El Paso Mar. 22,

---

[1] [Appellant] on or about the 13th day of April A.D. 2006 . . . did then and there intentionally and knowingly threaten Jesus Garcia with imminent bodily injury by pointing a firearm and shooting a firearm at Jesus Garcia, and did then and there use and exhibit a deadly weapon, to-wit: a firearm, during the commission of said assault, and [Appellant] did then and there know that the said Jesus Garcia was then and there a public servant, to-wit: a City of McKinney police officer, and that the said Jesus Garcia was then and there lawfully discharging an official duty, to-wit: execution of a warrant . . . .

2007, no pet.)(not designated for publication).

The abstract portion of the charge instructed the jury that; "[a] person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result." By failing to limit the definition of "knowingly" to the nature of the conduct as charged in the indictment, the court erred as the Appellant argues. *See Cook v. State*, 884 S.W.2d 485, 491 (Tex.Crim.App. 1994). This does not end our inquiry however, as the error must have cause Appellant egregious harm to serve as a basis for reversal. *See Abdnor*, 871 S.W.2d at 732. A review of the charge as a whole demonstrates that despite the incorrect definition in the charge's abstract, in the application paragraph the terms intentionally and knowingly clearly modified the nature of Appellant's conduct in threatening Jesus Garcia with imminent bodily injury by the use of a firearm. There is no reference to any other conduct element. Because the application paragraph correctly instructed the jury, the error in the abstract does not constitute egregious harm. *Medina v. State*, 7 S.W.3d 633, 640 (Tex.Crim.App. 1999). Issue One is overruled.

In Issue Two, Appellant challenges the legal and factual sufficiency of the evidence supporting the conviction. In a legal sufficiency review, we must consider all of the evidence in a light most favorable to the verdict, and determine whether a reasonable minded juror could have found the essential elements of the charged crime were proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex.Crim.App. 2007). We must defer to "'the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Hooper*, 214 S.W.3d at 13.

In a factual sufficiency review, we consider all the evidence in a neutral light. *Roberts v. State*, 220 S.W.3d 521, 524 (Tex.Crim.App. 2007). Evidence is factually insufficient if: (1) the evidence supporting the verdict is so weak that it renders the verdict clearly wrong and manifestly unjust; or (2) the evidence supporting the verdict is outweighed by the great weight and preponderance of the evidence, so that the verdict is clearly wrong, or manifestly unjust. *Id*. We cannot reverse a conviction under the "clearly wrong" or "manifestly unjust" standards simply because, based on the quantum of evidence admitted, we would have voted to acquit. *Watson v. State*, 204 S.W.3d 404, 417 (Tex.Crim.App. 2006). Nor can we declare that a conflict in the evidence justified a new trial because we disagree with the jury's resolution of the conflict. *Id*. A new trial will only be granted when the reviewing court determines, on an objective basis, that the great weight and preponderance of the evidence contradicts the jury's verdict. *Id*. In addition, our review should not substantially intrude upon the fact finder's role as the sole judge of the weight and credibility given to witness testimony. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex.Crim.App. 2000); *see also Marshall v. State*, 210 S.W.3d 618, 625 (Tex.Crim.App. 2006)(factual sufficiency review continues to require "due deference" be given to the jury's determinations).

As discussed above, Appellant was accused of the offense of aggravated assault of a public servant for threatening a police office with a firearm. *See* TEX.PENAL CODE ANN. § 22.02(a)(2), (b)(2)(B). He argues the evidence is insufficient to sustain his conviction because the record conclusively establishes that he was acting in self-defense when as a result of an actual injury from police gunfire. Similarly, Appellant contends the evidence is insufficient to support the jury's finding that he knew Officer Garcia was a police officer when he fired his weapon.

However, Appellant admits in his brief that his location, position, and actions during the officers' entry was heavily contested. He also points out that while Officer Garcia testified that Appellant was facing the officers with his weapon as they entered, there was contrary physical evidence indicating that he was acting in self-defense. But, by their guilty verdict, the jury implicitly resolved any conflicts in the evidence against Appellant, and we simply will intrude upon the jury's role as fact finder in our sufficiency review. *See Marshall*, 210 S.W.3d at 625.

Appellant's second argument challenges the "knowledge" element of the offense. To establish the offense of aggravated assault against a public servant, the prosecution must establish the defendant knew the individual he was assaulting was a public official; a law enforcement officer in this case. *See* TEX.PENAL CODE ANN. § 22.02(a)(2), (b)(2)(B).

A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. TEX.PENAL CODE ANN. § 6.03(b)(Vernon 2003). A defendant's knowledge is a fact question to be determined from the totality of the circumstances. *See Smith v. State*, 965 S.W.2d 509, 513 (Tex.Crim.App. 1998). The jury may infer the existence of a mental state from any facts tending to prove its existence, including the acts, words, and conduct of the accused. *See Hart v. State*, 89 S.W.3d 61, 64 (Tex.Crim.App. 2002).

Appellant argues the evidence is insufficient to establish his knowledge that Jesus Garcia was a police officer because he was unable to see the "Police" markings on Officer Garcia's clothing due to the darkness, the officer's positions, and the smoke caused by two flash devices the officer's deployed as they entered the house. In addition, Appellant argues the evidence demonstrates he was unable to hear the officers announcing themselves as "police" and giving

-6-

occupants orders to "get down" because his hearing was temporarily damaged by the noise from the flash devices.

Again Appellant's candidly acknowledges a conflict in the evidence on this issue. Officer Joel Pursur, was the "breach man" responsible for the S.W.A.T. team's initial entry into the house. He testified the team broke through Appellant's back door with a single blow of their ramming device. Immediately upon entry, another officer deployed a "distracting device" which was "very loud" but did not prohibit him from being able to hear his fellow officers yelling through the house that they were the police, and instructing any occupants to "get on the ground." Officer Pursur moved through the house and reached the living area and front door as the second team was entering. The second team deployed another distracting device, immediately inside the front door, as Pursur's team moved down the hallway to the bedrooms. The other three members of his team, including Officer Garcia were ahead of Pursur in the hallway. Corporal Barker, another S.W.A.T. officer, testified that the team continued to announce themselves, and order occupants to "get on the ground" at all times as the team moved through the house. Corporal Barker watched as Officer Garcia turned to engage someone in a bedroom doorway.

Appellant testified in his own defense. He explained to the jury that he was asleep when the police entered the house. He testified that he woke up to "an explosion" and that he was confused, and his ears were ringing. He did not hear the officers announcing themselves, or ordering him to get on the ground. Then there was a light shining in his face and he swung his arm over his face to cover his eyes. Appellant testified that the first shots came from the light in his bedroom doorway, and he was hit in the chest. The impact rolled his body, and another shot hit him in the upper leg as he was reaching for his own pistol to return fire. He fired several

-7-

rounds back toward the door, and he could not see the police markings on the officers' uniforms because of the blinding light in his face.

Based on the totality of the circumstances, the jury could reasonably have determined, based on the officers' testimony, that the flash devices were not an impediment to Appellant being able to see or hear the officers as they moved toward his bedroom. *See Smith*, 965 S.W.2d at 513. Although his testimony reads persuasively, the jury was free to disregard his testimony and believe the accounts of the officers that they could hear each other over the sound of the entry devices. *See Marshall*, 210 S.W.3d at 625. Based on their announcements, the jury could have inferred that Appellant knew, or should have known that the individual in his bedroom doorway was a police officer. Accordingly, viewed in either a neutral or favorable light, the evidence was sufficient to support the jury's finding that Appellant was aware Jesus Garcia was a law enforcement officer. Issue Two is overruled.

In Issue Three, Appellant contends the trial court's denial of his motion to suppress was erroneous because the police failed to knock and announce themselves prior to entering Appellant's house, despite the fact that the search warrant the officers were executing did not authorize the officers to enter without announcing themselves.

We review a trial court's ruling on a motion to suppress for an abuse of discretion. *Oles v. State*, 993 S.W.2d 103, 106 (Tex.Crim.App. 1999). While we will defer to the trial court's determination of historical facts where they find support in the record, we must review questions of law *de novo*. *See Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997). Similarly, when a mixed question of law and fact does not turn on an evaluation of witness credibility and demeanor, we will apply a *de novo* standard. *See id*. Ultimately, however, a suppression ruling

will stand unless if falls outside the bounds of reasonable disagreement.  *See Janecka v. State*, 937 S.W.2d 456, 462 (Tex.Crim.App. 1996).

Appellant's suppression argument is limited to the fact that the officers entered his home without announcing themselves.  Appellant concludes any evidence discovered during the search should have been excluded because the officers violated the "knock and annouce" rule, and therefore violated his Fourth Amendment right against unlawful search and seizure.

The Fourth Amendment guarantees, "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures . . . ."  U.S. CONST. AMEND. IV; *Brewer v. State*, 932 S.W.2d 161, 167 (Tex.App.--El Paso 1996, no pet.). The Fourth Amendment does not prohibit all searches and seizures, only those that are unreasonable.  *Ibarra v. State*, 11 S.W.3d 189, 192 (Tex.Crim.App. 1999).  The reasonableness of a search is determined by considering two competing interests; the degree to which it intrudes upon an individual's privacy, and the degree to which it is necessary for the promotion of legitimate public interests.  *U.S. v. Knights*, 534 U.S. 112, 118-19, 122 S.Ct. 587, 591, 151 L.Ed.2d 497 (2001).  Absent exceptions not applicable in this case, it is the requirement that police obtain a search warrant prior to conducting a search, that implements this guarantee.  *See U.S. v. Karo*, 468 U.S. 705, 717-18, 104 S.Ct. 3296, 3304-05, 82 L.Ed.2d 530 (1984); *see also* TEX.CODE CRIM.PROC.ANN. art. 18.01 (Vernon Supp. 2009)(providing the requirements for the issuance of a search warrant in Texas).

The general requirement that police knock, and announce their presence and intent to enter, (the "knock and announce" rule) is an element to be considered when determining the reasonableness of a search or seizure.  *See Wilson v. Arkansas*, 514 U.S. 927, 934, 115 S.Ct.

1914, 1918, 131 L.Ed.2d 976 (1995). However, an otherwise legal search, pursuant to a lawful warrant will not be rendered "unreasonable" in Fourth Amendment terms due only to an improper entry. *See Hudson v. Michigan*, 547 U.S. 586, 600, 126 S.Ct. 2159, 2168, 165 L.Ed.2d 56 (2006). Therefore, even if we were to assume, for argument's sake that the officers violated the "knock and announce" rule when they executed the warrant in this case, suppression was not the proper remedy for such a violation. *See Hudson*, 547 U.S. at 594, 126 S.Ct. at 2165 (concluding that police officers's conceded violation of the "knock and announce" rule did not require suppression of the evidence found during search of defendant's home); *Martinez v. State*, 220 S.W.3d 183, 189-90 (Tex.App.--Austin 2007, no pet.)(holding suppression issue rendered moot by appellant's failure to demonstrate Fourth Amendment violation by officers's failure to knock and announce prior to executing lawful search warrant). In light of *Hudson*, we conclude the trial court did not abuse its discretion by denying the motion to suppress. Issue Three is overruled.

We affirm the trial court's judgment.


March 31, 2010
                                        DAVID WELLINGTON CHEW, Chief Justice

Before Chew, C.J., McClure, and Rivera, JJ.

(Do Not Publish)